## Ralph E. Lidster v. Mina Poole, Administratrix.
### Gen. No. 4,504.

1. TAXES—*right of mortgagee to pay, and be reimbursed for.* The holder of a mortgage on real estate may, if the mortgagor fails to do so, pay the taxes on the mortgaged premises and compel the mortgagor to refund it by adding it to the amount of the mortgage indebtedness.

2. SUBROGATION—*when applies as against dower claimant.* A lien holder who has paid taxes and reduced an outstanding mortgage to protect his interests, is entitled to be subrogated as against the rights of a dower claimant where the lien so protected existed at the time of the marriage of the deceased owner although the payments were subsequently made.

3. DOWER—*when estoppel to assert, as against lien claimant, arises.* Where a lien holder whose rights existed at the time of the marriage of

the dower claimant to the owner of the land in question, pays taxes and reduces an outstanding encumbrance with the consent and acquiescence of such dower claimant, she becomes estopped to assert her dower claim as against such lien holder with respect to such payments.

4. FREEHOLD—*when not involved.* A freehold is not involved where the question is merely one of priority as between a claim for lien and a claim for dower and homestead.

Contest in court of probate. Appeal from the County Court of Lee County; the Hon. ROBERT H. SCOTT, Judge, presiding. Heard in this court at the April term, 1905. Reversed and remanded. Opinion filed August 1, 1905.

E. W. ADKINSON, for appellant.

S. B. POOL AND H. A. BROOKS, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

This is an appeal from a decree of the County Court of Lee county, authorizing and directing Mina Poole, administratrix of the estate of James Poole, deceased, to sell certain real estate for the payment of debts of said deceased. The legal title to the real estate, which consisted of farm lands in Lee county, was in Ralph E. Lidster, who held them in trust for James Poole. November 12, 1897, Mary L. Sanders, then owner of said lands, exchanged them for certain Chicago properties which Lidster held in trust for Poole. Lidster executed to her a deed to the Chicago properties and she conveyed the Lee county lands to him. The Lee county lands were subject to a mortgage of $10,000 and the taxes of 1897, which by the terms of the deed to Lidster he assumed and agreed to pay. Poole was then a single man and so remained until May following, when he married. His widow is the administratrix and appellee here. On the 19th day of February, 1898, an agreement called a declaration of trust was executed by Lidster and Poole wherein after reciting the conveyance by Mary L. Sanders to Lidster of the property in controversy, subject to a mortgage of $10,000 which Lidster had assumed and agreed to pay, it was recited that, "it is herby agreed by and between said R. E. Lidster and James Poole that the above mentioned and described premises is the property of

James Poole, subject to an indebtedness of six hundred sixty-two and 45-100 dollars due and owing from said Poole to said Lidster, and it further being hereby agreed that said Poole is the actual owner of said property, subject only to said indebtedness: Now, therefore, it is hereby agreed by and between said Lidster and Poole that as soon as the said James Poole, his administrators, executors, heirs or assigns, shall pay to the said Lidster, or cause to be paid to him, said sum of six hundred sixty-two and 45-100 dollars as also any and all other obligations assumed or to be assumed by said Lidster for said Poole, together with accrued interest, that then said R. E. Lidster will, upon demand, convey by a good and sufficient warranty deed said above described property to the said Jas. Poole, or to his heirs, executors, administrators or assigns." Lidster was made a party defendant to the petition in the County Court and answered, claiming that under and by virtue of this agreement, he had advanced for. and paid out to Poole large sums of money, in addition to the $662.45 mentioned in the agreement. A stipulation of facts was agreed to which in substance is as follows: That the $10,000 mortgage was paid off by Lidster procuring a new loan on the same premises for $7,500, the notes and mortgage for which were signed by him, Poole and wife, and the payment by Lidster out of his own money of $2,815.54 on March 6, 1900, the date of the $7,500 loan. This loan bore interest at the rate of six per cent., payable semi-annually, all of which Lidster paid up to and including the interest due March 1, 1904, a total of eight payments of $225 each. He also paid certain expenses in connection with the new loan, such as attorney's fees, expenses of extending abstract and commissions for procuring the loan, also insurance on farm buildings, several years taxes on the land, recording fees, etc. He also guaranteed a note of Poole for $24.14, paid $18.81 freight on cattle shipped to the farm, furnished Poole $200 cash at one time, $315 at another time to buy horses for use on the farm, paid a Mrs. Lonergan $260 for chicken houses on the farm, at another time gave Poole $25 cash, at another time

$5, and for all of the moneys so paid out by Lidster he claimed to be entitled to a lien on the real estate by virtue of the above mentioned agreement, that his lien was in effect a mortgage and was prior to the claims of the widow and entitled to be first paid out of the proceeds of the sale. The County Court found Lidster had a mortgage lien on the premises for the $662.45 and the interest thereon at five per cent. from the date of the agreement, but denied his claim for a lien for any other sum and decreed that the widow was entitled to homestead and dower in the premises, subject only to the $7,500 mortgage and the $662.45 to Lidster. In the disallowance of Lidster's claim for liens on account of some of the amounts paid by him, we think the court erred.

It is argued by appellee that the only money secured by the agreement and for which a lien can be declared is the $662.45 and that as to all other payments made by Lidster, the agreement, if valid between the parties to it, amounted to a mortgage for future advances and is subject to the rights of the widow; that these payments were optional advances and that if the agreement was effective to create a lien upon the lands for their payment, such lien could only take effect from the date the payments were made. From the evidence it appears that at the time this declaration of trust or agreement was made, Lidster had no other interest in the land than the $662.45 Poole owed him, and the fact also that he had become personally responsible for the payment of the $10,000 mortgage on the premises. It is not denied, and the court found that as to the $662.45 he had a lien which was in effect a mortgage. The only interest or purpose he could have had then in paying the interest on the mortgage and the taxes on the land was to protect his lien on and interest in the property. Such payments could have been of no other benefit to him whatever. We regard the law as well settled that the holder of a mortgage on real estate may, if the mortgagor fails to do so, pay the taxes on the mortgaged premises and compel the mortgagor to refund it by adding it to the

Lidster v. Poole.

amount of the mortgage indebtedness, but Lidster's right to charge money thus paid out against the land does not rest alone upon the law but we think is authorized by the agreement above mentioned as is also the right to a lien for the payment of interest. As we have before stated, the only benefit Lidster could derive from the payment of any part of the mortgage or the interest and taxes was to protect the land from sale, and thereby preserve his lien. Poole received the benefit of these payments, and the agreement, in addition to making the land subject to the payment of the $662.45, further recites that this was the only interest Lidster then had in the land, that Poole was the actual owner of it subject to that indebtedness, and that as soon as he paid Lidster that sum "as also any and *all other obligations assumed or to be assumed* by said Lidster for said Poole, together with the accrued interest," that then Lidster will, upon demand, convey the property subject to the incumbrances existing upon said property at the time said conveyance is made.

This agreement besides being in effect a mortgage to secure the $662.45 was also a mortgage to secure future advances in the nature of debts of Poole paid or assumed by Lidster, and that it was valid for that purpose as between the parties, is not questioned. The contention of appellee is that upon the marriage of Poole to her, which occurred May 21, 1898, her right to have dower assigned her in the lands in the event she survived her husband, attached in the nature of an incumbrance in her favor, and took priority over any advances made after the marriage. The evidence shows that all payments made by Lidster to or on account of Poole, except the $662.45, were made after his marriage to appellee. If the agreement contemplated securing money loaned Poole, as well as indebtedness or charges against the land paid or assumed by Lidster, it did not limit or fix any amount of such future advances nor obligate Lidster to make them. It was, except as to advances made for the protection of his security, optional with him whether he should make them or not.

The lien for advances so made is subject to an incumbrance of which the mortgagee had notice before making the advances. "Where a mortgagee is not bound to make advances and has actual notice of a later incumbrance upon the property for an existing debt or liability, such later incumbrance will take precedence of the mortgage as to all advances made after such notice." 1 Jones on Mortgages, sec. 369. That the inchoate right of dower is an incumbrance, is held in McCord v. Massey, 155 Ill. 123. See also Am. & Eng. Ency. of Law, vol. 10, 144.

But, in our view of the law, the payment of the taxes on the land, principal and interest on the mortgage, and insurance, cannot be said to be optional advances. They were paid to protect the junior lien held by Lidster. It was the duty of Poole to pay the taxes on the land, and if he failed to do so it jeopardized Lidster's security and might result in its loss. Under such circumstances the payment cannot be said to be optional, and when Lidster paid the taxes, he became entitled to be subrogated to their lien against the property. Pratt v. Pratt, 96 Ill. 184; Wright v. Langley, 36 Ill. 381; Sharp v. Thompson, 100 Ill. 447; 2 Jones on Mortgages, secs. 1080 and 1134; Sheldon on Subrogation, secs. 11, 12, *et seq.* We think the same reasoning holds good also as to the money paid by Lidster to reduce the $10,000 mortgage to $7,500 and all interest paid on the mortgage indebtedness. These sums were secured by liens against the land prior to that of Lidster. It was the duty of Poole to pay them and if he failed to do so, Lidster was bound to make the payments to protect his security. The only difference between the lien of the taxes and that of the mortgage and interest, is, that as to the taxes the lien is in the state, and as to the mortgage it is in an individual. In order to protect himself it was as necessary for Lidster to pay the interest on the mortgage as to pay the taxes on the land, and he was as much entitled to be subrogated to the lien thereof as to the lien of the taxes. Ebert v. Gerding, 116 Ill. 216; Illinois National Bank v. Trustees of Schools, 211 Ill. 500, and authorities there cited. As to

the $2,813.54 paid by Lidster on the mortgage when it was reduced to $7,500, there is a reason in addition t the written agreement, and the law of subrogation why it should take priority over the claims of appellee as widow. It is agreed that appellee joined with her husband and Lidster in the execution of the renewal notes and mortgage. She must, therefore, be presumed to have known and consented to Lidster paying that large sum out of his own means upon the understanding and belief that he had a lien against the land to secure it to him. No reason whatever appears for Lidster making this payment, except as an accommodation to the Pooles, and it would be most inequitable now for Mrs. Poole to be allowed to repudiate her consent and acquiescence at the time the transaction occurred. The rules of equity are applicable in the determination of the rights of the parties. The Pooles are in nowise injured by subrogating Lidster to the rights of the lien-holders of the liens he paid off and discharged. At the time they were paid they were valid, subsisting liens. By taking them up, Lidster accomplished the double purpose of protecting his own junior lien, and also gave the Pooles the benefit of the enjoyment of the property resulting from an extension of time in foreclosing the liens.

We are of opinion that in addition to the $662.45 Lidster is entitled to a prior lien on the land to appellee's claims for all principal and interest paid on the mortgage, all expenses paid in procuring the new loan, all taxes paid on the land, and insurance on the buildings thereon, with five per cent. interest on the respective amounts from the dates of their payments. That as to the remainder of the items, they were payments not required to be made by the written agreement between the parties, nor for the protection of Lidster's junior lien and being made after he had knowledge of the marriage of Poole to appellee, his lien, therefor, is subject to her rights as widow.

Counsel for appellee contend that her right to an estate of homestead and dower is denied, and that, therefore, a freehold is involved and, consequently, this court has no

jurisdiction to entertain this appeal. We do not so understand it. Mrs. Poole's right to homestead and dower is not denied nor involved. She is conceded to be entitled to those estates, but the question is, are they prior or subject to the lien of Lidster. In such case no freehold is involved. Richie v. Cox, 188 Ill. 276; Frier v. Lowe, 207 Ill. 410. The decree of the County Court is, therefore, reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*