Van Voorhis, J.
 

 Under a contract with defendant Vioe, defendant O
 
 &
 
 E agreed to do excavation, grading and drainage work on property which Vioe was developing for lease to S. Klein Department Stores, Inc. Plaintiff subcontracted to lay certain drainage pipes. In March,
 
 1959 O &
 
 E removed its" equipment from the job site and on the basis of that and other alleged breaches of the contract Vioe declared O & E in default. Plaintiff completed the drainage work, to the knowledge of Vioe, after Vioe had declared the principal contract broken by O & E. O
 
 &
 
 E did not pay plaintiff and plaintiff filed a notice of mechanic’s lien for the amount owed to it by O & E. This action was commenced to foreclose the mechanic’s lien. Another action by Vioe against O & E for breach of contract commenced in New York C'ounty was consolidated with this action for trial. Defendant O & E alleged counter
 
 *331
 
 claims against Vioe for amounts alleged to be due to it for work done under the contract. The counterclaim's, comprising the substance of Vice’s complaint in the consolidated action, were treated as cross complaints in the action to foreclose the mechanic’s lien.
 

 The trial court found that O & E did not abandon or breach the contract, that O & E was entitled to recover from Vioe the balance due for work, labor and service's and materials furnished, plus loss of profits because of breach of contract by Vioe, that plaintiff was entitled to judgment against O
 
 &
 
 E for the amount due it and to establishment of its mechanic’s lien on the land.
 
 *
 

 The Appellate Division found that Vioe was justified in terminating the contract with O & E for O & E’s refusal to comply with demands to resume performance of the contract, O & E’s removal of its equipment from the job site and its refusal to furnish a performance and payment bond; that a determination that Vioe owed O & E nothing at the time plaintiff filed its notice of lien would have been justified, and, therefore, no fund was in existence to which the lien attached and the lien was unenforeible at least through the subcontract with O & E; that, in order to prevent unjust enrichment of Vioe, plaintiff was entitled to relief (on a cause of action which was added pursuant to permission by the Appellate Division) in the form of a money judgment against Vioe on quasi-contract or constructive trust (implied in law) for work done and materials supplied by plaintiff, Vioe having permitted plaintiff to continue to perform under its subcontract and having fostered and promoted such performance by plaintiff.
 

 Defendant Vioe argues,
 
 inter alia,
 
 in support of its appeal that the court below erred in holding that plaintiff is entitled to any judgment against Vioe; that it was error to grant the plaintiff’s motion to amend its complaint to allege a new cause of action against Vioe, because it was deprived of an opportunity to meet the issues raised by the new cause of
 
 *332
 
 action, and because plaintiff did not appeal to the Appellate Division on account of the trial court’s adverse ruling in denying its-motion to amend by adding the cause of action on which recovery was allowed.
 

 Defendant O & E argues on its appeal that the Appellate Division erred, both in law and fact, in holding that
 
 ‘ ‘
 
 a damage award in favor of Vioe against O & E would have been justified ’ ’; that Vioe’s notice of contract termination was ineffective, unwarranted and improper under the provisions of the contract, and, in any event, was cancelled or waived by Vioe’s later conduct; that, at the time of the filing of plaintiff’s mechanic’s lien, a fund existed sufficient to pay the lien which was subject to -appropriate action to foreclose.
 

 The plaintiff, also appealing, argues,
 
 inter alia,
 
 that O & E did not abandon the contract; that the permitting and acceptance of performance of plaintiff’s subcontract constituted a waiver in law of the termination of the contract, thus making Vioe liable -under its contract with O & E and to plaintiff.
 

 Since the Appellate Division modified on the law and the facts, it is incumbent on us to decide which version of the facts more nearly accords with the evidence. Our conclusion is that the trial court’s findings are nearer to what is disclosed by the record than those of the Appellate Division, i.e., that Vioe rather than O & E broke the principal contract. We conclude that Vioe owes money to O & E, out of which Tibbetts (plaintiff) is entitled to be paid. In that posture of the case, it becomes immaterial whether Tibbetts could recover against Vioe on .some quasi-contract theory of unjust enrichment.
 

 The contract between Vioe and O & E was entire; it provided a flat price of'$127,750 for the performance of “ all excavating, filling, drainage, grading and related work required by the Drawings and/or as described in this Specification, generally as follows” (cf. contract Exhibit A, p. 582) after which the work is more particularly described. Unit prices applied only to
 
 “
 
 additions and/or deductions ”, resulting- from modification of the contract as the work progressed. The subcontract between O
 
 &
 
 E and Tibbetts, as has been stated, was for drainage. O
 
 &
 
 E happened to deal with Tibbetts in this manner: it came about that in preparing this site for an S. Klein Department Stores, Inc., shopping development in Yonkers,
 
 *333
 
 Vioe had made a contract with Tibbetts January 30, 1959 for the laying of an 84-inch storm water drain which was not included in the drawings and specifications covering the drains to be installed by O & E under its contract with Yioe. O & E was, however, required under its contract to backfill and grade after the drainpipes had been installed under this contract between Yioe and Tibbetts. The drains were laid under that contract by March 18, 1959, although the manholes were not installed until a later date and the contract was not finally completed until June 14 or 15, 1959. It may be assumed that, weather permitting, these trenches could have been refilled before the manholes were installed, although there may be doubt that the grading could have been finished before then. While the work was in progress under the contract mentioned between Yioe and Tibbetts for the installation of the 84-inch drain, O & E sublet to Tibbetts, which was already on the job site, the completion of the drainage work covered by the contract between O & E and Yioe. Oral arrangements were made to that effect on March 3, 1959 for a stated price of $28,550 which, plus extras, amounted without dispute to the principal sum of $30,217. This work to be performed by O & E was commenced by Tibbetts under the subcontract on March 16 and completed June 15, 1959. No party to the litigation questions that the work by Tibbetts was satisfactorily completed. Tibbetts was paid by Yioe $91,500 August 27, 1959 for laying the 84-inch drain under its contract with Yioe. It has never been paid for the similar work subcontracted to it by O
 
 &
 
 E. Instead of billing Yioe it billed O & E under its subcontract.
 

 On March 18, 1959 Yioe notified O & E that it had abandoned its contract unless alleged defaults in performance were rectified under the terms of the contract within three days, and on March 27 notification was given that the defaults had not been rectified, that the contract had been terminated and that O & E would be charged with excess costs of completion. The O & E contract work (except what had been subcontracted to Tibbetts) was completed by a concern known as County Asphalt Corporation to which Yioe relet the balance of the work at a charge of $87,229.49 in excess of the figure of $127,750 for which O & E had contracted to do the entire job including the amount payable under the subcontract to Tibbetts. Having
 
 *334
 
 subcontracted to do its part of the work under O
 
 &
 
 E, and having billed O & E (not Vioe) upon its completion, Tibbettscannot look to Vioe for payment except through O & E. But by permitting Tibbetts to continue with the performance of its subcontract at the same time insisting that Tibbetts could look only to O & E for remuneration, Vioe waived its notice of termination of the principal contract with O & E. There is nothing in the record about any agreement having been made between Vioe and O
 
 &
 
 E, after notice of termination of the principal contract, that O & E would finish Tibbetts’ part of its work in mitigation of damages. Tibbetts was to that extent the alter ego of O & E insofar as Vioe was concerned. Regardless of whether Tibbetts knew that Vioe had supplanted O & E by County Asphalt, or that Vioe had given O & E notice of termination of the principal contract, Vioe could not accept performance by Tibbetts of the drainage work covered by the main contract with O & E, at the same time disclaiming obligation to Tibbetts on the ground that Tibbetts was working for O & E and could look solely to O & E for payment, unless Vioe recognized that O & E through Tibbetts was continuing the performance of 0 & E’.s contract. That was inconsistent with a contention that Vioe had no further relationship with O & E, and that the O & E contract had been ended. Nobody contends that there was any express contract between Vioe and Tibbetts. No contract between them could be implied in fact, inasmuch as Vioe has disclaimed any such relationship throughout and Tibbetts acquiesced in that interpretation by billing Vioe only for the drains which it laid under contract with Vioe, and billing O & E under the subcontract after the work was completed. That was not done by mistake, either of fact or of law. Tibbetts knew of the alleged termination of the principal contract with O & E inasmuch as County Asphalt commenced its operations on the ground March 24, 1959 taking over the work from O & E which was no longer on the scene. If O
 
 &
 
 E were able to pay, this question could not have arisen. Tibbetts would have been paid by O & E for work satisfactorily performed under the subcontract. 0 & E’s agreement with Tibbetts was never repudiated, terminated or modified by any agreement. Tibbetts has the undoubted right to look to O & E for recompense, it entered upon and completed the work in
 
 *335
 
 reliance exclusively on its rights under O & E, and the circumstances did not create a contract relationship implied in law but nonexistent in fact, whereby Vioe became liable personally to Tibbetts jointly with O & E regardless of whether there is any fund arising from a liability by Vioe to O
 
 &
 
 E (cf.
 
 Miller
 
 v.
 
 Schloss,
 
 218 N. Y. 400, 406-408).
 

 Under the judgment of the trial court Vioe broke the contract, and the amount owing by O
 
 &
 
 E to Tibbetts is part of the damages which O & E was held to be entitled to recover from Vioe. Tibbetts was awarded a lien on the proceeds to satisfy its debt from O
 
 &
 
 E (Lien Law §§ 4, 70, 71;
 
 Dempsey
 
 v.
 
 Mount Sinai Hosp.,
 
 186 App. Div. 334, affd. 227 N. Y. 661;
 
 Soll
 
 v.
 
 Camardella,
 
 277 App. Div. 1004;
 
 W. E. Blume, Inc.,
 
 v.
 
 Postal Tel. Cable Co.,
 
 265 App. Div. 1062). This, we think, was correct. The contract with O
 
 &
 
 E was nearly completed, and would have been later if Vioe had not made performance impossible on March 18, 1959 by throwing O & E off the job and substituting County Asphalt. A month and two weeks before that (February 5, 1959) O & E submitted invoice No. 1005 for $95,812.50 based on an estimated 75% level of job completion. Vioe checked and revised the requisition and authorized payment to the extent of $88,000 which is approximately 70% of the total job cost. This did not even include the $30,217 which later represented the satisfactory performance of the Tibbetts’ subcontract. All of its work, including that of Tibbetts under its subcontract, O & E had contracted to perform for the flat price of $127,750. Although paragraph 34 of the contract (Exhibit A, p. 582) provides that no payment shall be conclusive evidence of performance, it may be inferred that Vioe would not have countenanced payment to O
 
 So
 
 E on the basis of performance of 70% of the work unless substantially that proportion of it had been completed. Add to that circumstance the fact that $30,217 or thereabouts in value was later done by Tibbetts by subcontract on behalf of O & E, and it becomes apparent that a larger proportion of the work which O & E contracted to do was performed for Vioe than the testimony and correspondence of its officers would tend to indicate. The O & E contract contained no specified time of completion, although, to be sure, the contract said that work was to proceed expeditiously and sequentially as determined by the builder Vioe (Exhibit A, 10th page). It
 
 *336
 
 made provision for delays caused by weather. Vioe seems to have been under pressure to complete .this site for Klein’s Department Store by April, 1959, which date was later postponed until June, 1959. It is apparent that Vioe wanted more equipment and men on the job than O & E had been using or had been obligated by the contract to employ on this job, in order to hasten its completion for Klein and save money due to the nonuse of the land pending completion. County Asphalt went in with more men and earth-moving machinery, and Vioe paid $143,313.95 to it and others to finish the work all of which O & E had contracted to do (including what was done by Tibbetts under subcontract) for $127,750 plus $2,650 for extras, or the total of $130,400.
 

 The testimony differs, as testimony does, but money talks, and if Vioe paid O & E for 70% of the work purporting to be covered by its contract, and, in addition, received the benefit of what was done for O & E by Tibbetts, we are inclined to credit the version given by Tibbetts and by O & E.
 

 The ground was frozen on March 17,1959, when O & E moved its bulldozers and pans to the nearby job at Idlewild. O & E claims to have done so with the consent of Vioe, which disputes that its consent was given. However that may be, O & E asserts that it would take but a short time to move its machinery back to the Klein job. There is no question that it was more costly to refill and grade in frozen ground. It is no answer to say that the frozen ground did not prevent Tibbetts from digging trenches and laying drainage pipes. Doing that is different from backfilling and grading. These operations could not be commenced, regardless of frozen ground, until after the laying of drainpipes had been completed by Tibbetts, on both the job that Tibbetts did directly for Vioe and on the one for which it subcontracted from O & E. Even the expensive job done by County Asphalt, working on a cost plus basis through the Winter regardless of frost, was evidently not finished in all its details until September 12, 1959. At least the dates of its invoices ranged from March 24 to September 12.
 

 It is evident that O & E did not intend to abandon the job on March 17, 1959, and expected to return when the progress of Tibbetts’ work and the weather conditions made it easier. Vioe
 
 *337
 
 insists upon the letter of its contract. It quotes the Draconian clauses found in such agreements to the effect that Vioe “ shall decide all questions which may arise as to the performance, quantity, quality, acceptability, fitness and rate of progress of the work or materials furnished under this contract ’ ’, that if the contractor ‘ ‘ delays the speedy progress of the work as in this Article or in any other Article provided, so as to cause loss or damage to the Builder or to the other Contractors, then it shall reimburse the Builder and such other Contractors for such loss”; and that “ Work shall start immediately and proceed in accordance with schedules determined by Builder * * * [and] in sequence and direction as required to meet the Builder’s schedule ’ ’; and that the work was to ‘ ‘ be prosecuted and completed with all possible diligence and speed or as otherwise directed by the Builder ” (§ 24).
 

 In spite of all this, the contract contains no specified date for completion. Delays caused by the weather or other contractors have provision made for them. At a time when the briefs and subsequent correspondence would indicate Vioe was disgusted with O & E’s performance, Vioe offered the 84-inch pipe storm sewer job to O
 
 &
 
 E in preference to Tibbetts, which got the contract after O
 
 &
 
 E’s refusal for which Tibbetts was paid $91,500.
 

 Language in contracts placing one party at the mercy of the other is not favored by the courts, and, while such clauses have some effect, the literal absolutism with which Vice’s counsel insists upon language construed to mean that O
 
 &
 
 E had to resort to any means whatever to expedite a contract entered into without completion date, at the categorical dictation of the other party, is not supported by the decisions
 
 (Sanford
 
 v.
 
 Brown Bros. Co.,
 
 208 N. Y. 90;
 
 Gillet
 
 v.
 
 Bank of America,
 
 160 N. Y. 549;
 
 Wilson & English Constr. Co.
 
 v.
 
 New York Cent. R. R. Co.,
 
 240 App. Div. 479).
 

 In this view of the case, the effect of the general release given by Tibbetts to Vioe at the time of payment of the $91,500 for the separate job contracted directly with Vioe becomes immaterial. It has been contended that this discharged Vioe not only from its obligation to pay Tibbetts for that job but also for any other job on account of which on any theory Vioe might be held liable. Since Tibbetts’ recovery is against O & E, the liability of Vioe
 
 *338
 
 to Tibbetts is derivative. Tibbetts claims through subrogation to the right of O
 
 &
 
 E
 
 (Szemko
 
 v.
 
 Weiner,
 
 176 App. Div. 620) which could not be barred by a release from Tibbetts.
 

 Our conclusion is that the failure of O & E to resume performance within three days on demand, and taking its equipment temporarily to the neighboring job at Idlewild, at a time when continuance or resumption of the work would have been futile or inordinately costly in view of the frozen condition of the ground (preventing backfilling and grading operations) and the lack of completion of the trench and drainage operations, did not constitute a breach of the contract. The belated demand for a performance bond, as well as any other defects which may have existed in performance, was waived in any event through the acquiescence of Vioe and its acceptance of the work done by Tibbetts under subcontract from O & E. The O & E contract was entire, as has been stated, nor is that circumstance altered by the language of the agreement purporting to permit Vioe, under certain circumstances, to “ employ others to complete all or part of the remaining portion of your contract ’ ’. It is apparent that these words could not make severable a contract which by its structure is entire, so as to continue it partly in existence when once it has been repudiated.
 

 As was well stated by the trial court (p. 645): “ The contract being for the lump sum of $127,500 for both the excavation and drainage work is a single, entire and undivisible contract
 
 (New Era Homes Corp.
 
 v.
 
 Forster,
 
 299 N. Y. 303;
 
 Portfolio
 
 v.
 
 Rubin,
 
 233 N. Y. 439). The assertion of a repudiation of the contract is nullified by a subsequent acceptance of benefits growing out of the contract
 
 (Brennan
 
 v.
 
 National Equitable Investment Co.,
 
 247 N. Y. 486). Thus, ‘O
 
 &
 
 E should have been permitted to complete the excavation portion of the contract also, and being prevented from doing so by the actions of Vioe, is entitled to recover from Vioe, the balance due for work, labor and services rendered and materials furnished, plus loss of profits because of the breach of contract by Vioe.”
 

 The order of the Appellate Division should be reversed, as well as its new findings, and the findings and judgment of the trial court reinstated, with costs in this court and in the Appellate Division to plaintiff-respondent-appellant and to defendant-respondent-appellant.
 

 
 *339
 
 Chief Judge Desmond and Judges Dye, Fuld, Burke, Soileppi and Bergan concur.
 

 Order of Appellate Division reversed and judgment of the Special Term reinstated, with costs in this court and in the Appellate Division to plaintiff and defendant 0
 
 &
 
 E Contracting Company, Inc., against defendant Vioe Realty Corp.
 

 *
 

 The amount of the recovery allowed to O & E by the trial court was computed by awarding in excess of the $74,000 already paid, as damages, the $30,217 owing to Tibbetts on the subcontract, $14,000 represented by the retained percentage, plus the sum of $4,783 representing extras and loss of profits, making in all the sum of $49,000 — out of which Tibbetts would be paid.