(No. 39589.—

WESTERN ILLINOIS STONE Co., Appellee, *vs.* THE DEPARTMENT OF REVENUE, Appellant.

*Opinion filed September 23, 1966.*

WILLIAM G. CLARK, Attorney General, of Springfield, (RICHARD A. MICHAEL, A. ZOLA GROVES, and PHILIP J.

Rock, Assistant Attorneys General, of counsel,) for appellant.

Andrew Kopp, of Moline, for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

After an administrative hearing the Department of Revenue decided that certain sales of gravel and crushed stone, made by Western Illinois Stone Company to Adams County, measured a tax under the Retailers Occupation Tax Act. (Ill. Rev. Stat. 1961, chap. 120, pars. 440-453.) In an administrative review action, the circuit court of Rock Island County reversed this determination in part, and the Department has appealed directly to this court. The revenue is involved.

As the case is presented to this court, the determinative issue is whether the sales in question took place before or after August 1, 1961. The contracts between the county and the taxpayer were entered into before August 1, 1961, but the deliveries here involved were not made until after that date. A brief reference to the history of section 2 of the statute is necessary to explain the significance of this date. In 1953, the General Assembly amended that section to exempt from the measure of the tax, receipts from "sales to the State of Illinois, any county, political subdivision or municipality thereof  *  *  *." (Ill. Rev. Stat. 1953, chap. 120, par. 441.) Because no comparable exemption was provided for sales to the Federal government, the 1953 exemption was held to be "unconstitutional and void," but separable. (*People ex rel. Holland Coal Co.* v. *Isaacs*, 22 Ill.2d 477, 483.) By an amendment approved July 31, 1961, the invalid exemption was eliminated. (Laws of Illinois, 1961, pp. 2314-16; Ill. Rev. Stat. 1961, chap. 120, par. 441.) Thereafter the Department of Revenue revised its rules and regulations to provide: "[E]ffective August 1, 1961, per-

sons engaged in the business of selling tangible personal property incur retailers' occupation tax liability when selling any such property to the State of Illinois or to local governments, their agencies or instrumentalities  *  *  *." Rules and Regulations Relating to the Retailers' Occupation Tax Act 1962, Rule 40.

The retailers' occupation tax is measured by gross receipts from sales at retail. (Ill. Rev. Stat. 1961, chap. 120, par. 441.) So far as here pertinent, the statute defines a sale at retail as "any transfer of the ownership of, or title to,  *  *  *  tangible personal property  *  *  *." (Ill. Rev. Stat. 1961, chap. 120, par. 440.) The question argued by the parties is whether "ownership of or title to" the gravel and crushed stone passed to the county prior to August 1, 1961. At the time of these transactions, that question was governed by the Uniform Sales Act, (Ill. Rev. Stat. 1961, chap. 121½, pars. 1-77), which had not yet been supplanted by the Uniform Commercial Code.

The taxpayer protested the "notice of proposed assessment" which it received from the Department, and requested a hearing. At the hearing it was stipulated: "The effect of these contracts, on the basis of which the Department made its proposed correction of deductions, is in dispute as a matter of law." The Department introduced copies of its correction of return and notice of proposed assessment and also introduced copies of the contracts for sale of the gravel and crushed stone. Each contract provided for the sale of a specified number of tons of gravel or crushed stone of a designated type for a specified price. Each contract provided, "Arrangement for the inspection of this material must be made with the Bureau of Materials, Division of Highways, State of Illinois, District Engineer at Springfield, Illinois, before shipping." And each contract required the seller to ship "as directed" by a county official, and to "furnish, haul and spread from tailgate" the purchased material.

At the hearing the taxpayer asked leave to submit, "within the next seven to ten days, certain certified copies of resolutions of the County Board of Supervisors of Adams County, which Taxpayer states are material and relevant in determining the legal effect of the contracts," and it was agreed that the authenticity of the copies of the resolutions would not be questioned. No such resolutions are contained in the record, and no reference is made to them in the taxpayer's brief.

The taxpayer maintains that the only issue before us is whether the contracts of sale were "requirements contracts," because the hearing officer so characterized them in his findings. It argues: "Nowhere in the record is there anything about when title passes to the goods sold, which would be more a question of fact than of law. Not having been presented in the original trial or hearing, such question comes too late when now presented on appeal. * * * Had this issue been presented in the original hearing or trial, plaintiff-appellee would have produced evidence explaining all 'the circumstances of the case.' "

We believe that this argument is without merit. The issue in the departmental hearing was clearly stated in the stipulation of the parties, and the taxpayer's present suggestion that it was somehow misled is inconsistent with its conduct at the hearing. The statute provides that copies of the Department's correction of return and notice of proposed assessment are "prima facie evidence of the correctness of the amount of the tax due, as shown therein." (Ill. Rev. Stat. 1961, chap. 120, par. 443.) The taxpayer, who had the burden of demonstrating that the proposed assessment was incorrect, can not fairly complain that the record is devoid of evidence on the critical statutory issue. The label "requirements contract" has no relevance to this case except as it concerns the time when the "ownership of or title to" the materials was transferred. It seems clear that by his use of this label in his findings the hearing officer did

not indicate that he had excluded the statutory issue from consideration.

Section 17 of the Uniform Sales Act provides, "Where there is a contract to sell unascertained goods no property in the goods is transferred to the buyer unless and until the goods are ascertained, * * *." (Ill. Rev. Stat. 1961, chap. 121½, par. 17.) In this case it was stipulated that "Taxpayer is a stone quarry conducting operations in three locations in Adams County." There is no evidence that the gravel and crushed rock had been quarried when the contracts were made, and there is no basis in the record for concluding that the contracts concerned "ascertained goods."

The taxpayer argues that if title did not pass when the contract was made, it passed when the goods were inspected. "When the inspection was made the material was unconditionally appropriated to the contract by the assent of the buyer as well as the assent of the seller." The taxpayer thus relies upon the provision of the Uniform Sales Act that in the absence of evidence of a contrary intention, "Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer." Ill. Rev. Stat. 1961, chap. 121½, par. 19, rule 4(1).

The difficulty with this argument is that there is no evidence that the inspection occurred before August 1, 1961. The taxpayer's further assumption that all the materials must have been inspected by that date because only a small percentage of the total sales to Adams County were found taxable by the Department seems to us to be based solely on conjecture.

In any event, we are persuaded that title to the materials did not pass until they were delivered. The contracts required the seller to furnish, haul, and spread the gravel

and crushed rock from the tailgates of trucks at locations to be specified. The Uniform Sales Act declares that unless a contrary intention is shown, "If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon." Ill. Rev. Stat. 1961, chap. 121½, par. 19, rule 5.

The judgment of the circuit court of Rock Island County is reversed and the cause is remanded for the entry of a judgment not inconsistent with this opinion.

*Reversed and remanded, with directions.*