**PENNWALT CORPORATION, a corporation, Plaintiff,**

v.

**The METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, a municipal corporation, Defendant.**

**No. 72 C 1776.**

United States District Court, N. D. Illinois.

Dec. 12, 1973.

---

Mark Crane, Chicago, Ill., for plaintiff.

Allen S. Lavin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

This is a diversity of citizenship action seeking to redress the alleged unjust enrichment of the defendant Metropolitan Sanitary District of Greater Chicago ("Sanitary District") by its refusal to reimburse the plaintiff Pennwalt Corporation ("Pennwalt") for Pennwalt's discharge of the Sanitary District's legal obligation to pay Illinois Use Tax.

The parties have agreed, solely for the purpose of the disposition of the instant action, to the following stipulation of facts:

1. The amount in controversy in this action exceeds $10,000 exclusive of interest and costs, and this Court has jurisdiction of the parties and of the subject matter by virtue of diversity of citizenship among the parties and the amount in controversy.

2. Pennwalt is a corporation organized under the laws of Pennsylvania and has its principal place of business in that state. Until March 31, 1969, Pennwalt's name was "Pennsalt Chemical Corporation."

3. Pennwalt, is and at all times relevant hereto was, engaged in the manufacture and sale of industrial chemicals including ferric chloride.

4. The Sanitary District is a municipal corporation organized under the laws of Illinois. The primary functions of the Sanitary District are to provide water purification and sewage treatment and disposal for the Chicago metropolitan area.

5. One of the chemicals used by the Sanitary District in performing its functions is ferric chloride. On the 10th day of April, 1958, Pennwalt and the Sanitary District entered into Contract No. 58–17 under which Pennwalt agreed to sell, and the Sanitary District agreed to purchase, quantities of real ferric chloride in solution during quarterly periods be-

ginning May 1, 1958 to March 31, 1963.

6. At the time the parties entered into the contract for the purchase and sale of ferric chloride, and at all times thereafter, Illinois levied a tax on the purchase of tangible personal property sold for use or consumption in Illinois. That tax is and was known as the Illinois Use Tax.

7. The Sanitary District's acquisition of ferric chloride from Pennwalt constituted a purchase by the Sanitary District of tangible personal property not purchased for resale.

8. From May 1958 until July 1961, the Sanitary District was exempt from the Illinois Use Tax by reason of its status as a "governmental body."

9. From August 1, 1961 to March 23, 1963 the Sanitary District was not exempt from the Illinois Use Tax.

10. The Sanitary District did not pay Illinois Use Tax to Pennwalt on its purchases of ferric chloride during the period August 1, 1961 to March 23, 1963. The only reason given by the Sanitary District for not paying the Use Tax on its purchases of ferric chloride from Pennwalt during the period August 1, 1961 until March 23, 1963 was that it had contracted with Pennwalt for such purchases at a time when it was exempt from the Illinois Use Tax.

11. Beginning in October of 1961, Pennwalt attempted to collect the 3½% Illinois Use Tax from the Sanitary District on sales of ferric chloride by the issuance of debit memoranda.

12. On November 14, 1961, E. A. Janssen, Engineer of Estimate and Inspection for the Sanitary District, advised Haskins & Sells, the certified public accountants for Pennwalt, that Pennwalt's attempted collection of the Illinois Use Tax was erroneous because the contract under which the sales were made was awarded prior to July 15, 1961. Pennwalt accepted the Sanitary District's contention that no Illinois Use Tax was due on sales of ferric chloride under Contract No. 58–17 and made no further attempts between November 1961 and May 1963 to collect said tax.

13. Under date of May 6, 1963, Pennwalt executed a release in favor of the District. The release recites as consideration the payment to Pennwalt by the District of $14,658.50, which was the undisputed balance due Pennwalt on Contract 58–17.

14. On April 18, 1963, the Sanitary District advised Pennwalt that its exemption from the Illinois Use Tax was reinstated as of March 21, 1963 and that the Sanitary District was not subject to the Use Tax on deliveries made after that date even though the contract for the purchase may have been entered into prior to March 21, 1963.

15. Between July 1, 1966 and August 1, 1966 Pennwalt's sales invoices were audited by the Sales and Use Tax Division of the Illinois Department of Revenue. The Department auditor questioned the failure of Pennwalt to collect Use Tax from the District on deliveries of ferric chloride made between January 1, 1962 through March 21, 1963. The Department auditor advised Pennwalt that such deliveries measured a Use Tax despite the fact that the District had contracted for such purchases at a time when it was exempt from the Use Tax. The Sanitary District was notified of the audit by letter dated July 15, 1966.

16. Between September 1966 and December 1966, representatives from Pennwalt's sales depart-

ment discussed the audit by the Illinois Department of Revenue and the question of unpaid Illinois Use Tax with representatives of the Sanitary District. If called to the stand, a representative of Pennwalt would testify that Joe Wade, who at that time was an employee of the Sanitary District's Maintenance and Operations Department, assured Pennwalt's sales representatives that the District would pay the Use Tax allegedly due on deliveries of ferric chloride during the period January 1, 1962 through March 23, 1963 either to Pennwalt or directly to the State of Illinois. If called to the stand, Joe Wade would deny making said assurances.

17. In a letter dated September 7, 1966, George A. Lane, attorney for the Sanitary District, advised Pennwalt that Mr. E. A. Janssen was no longer employed by the District and that an examination of the files indicated that there was no basis for Janssen's letter of November 14th to Haskins & Sells.

18. On May 29, 1967, the Sanitary District filed an antitrust suit against Pennwalt Chemicals Corporation in the United States District Court for the Northern District of California. In connection with the antitrust suit, the Sanitary District filed on August 16, 1967, Answers to Interrogatories. The Answers stated that Contract No. 58–17 with Pennwalt for the sale of ferric chloride was one of the transactions involved in the antitrust suit. The antitrust suit was settled and a release executed on August 12, 1969. In the antitrust suit, Pennwalt did not file any counter-claims.

19. Under date of June 5, 1968, the Department of Revenue of the State of Illinois issued a Notice of Tax Liability to Pennwalt. Said Notice included an assessment for Use Tax, penalty and interest due on purchases of ferric chloride made by the Sanitary District under Contract No. 58–17 during the period January 1, 1962 to March 23, 1963. The Sanitary District had no notice of such Notice of Tax Liability.

20. Pennwalt formally resisted and contested the assessment of Use Tax on purchases by the Sanitary District under Contract No. 58–17 during the period January 1, 1962 to March 23, 1963 on the basis that sales to the District did not measure a tax because the District had contracted with Pennwalt for such purchases prior to July 1, 1961 and at a time when the District was exempt from the payment of Use Tax. Under date of October 15, 1968, the Department of Revenue rejected Pennwalt's objections as reflected in the Hearing Disposition and a Final Assessment was issued against Pennwalt on August 20, 1969 which included an assessment for Use Tax, penalty and interest due on said purchases. The Sanitary District received no notice of, nor did it participate in, the hearings before the Department of Revenue nor did it receive notice of the issuance of the Final Assessment.

21. On February 13, 1970, the Circuit Court of Sangamon County entered a judgment against Pennwalt on its complaint under the Administrative Review Act. The judgment sustained, among other things, that part of the Final Assessment which assessed a Use Tax deficiency, penalty and interest on sales to the Sanitary District under Contract No. 58–17 during the period January 1, 1962 to March 23, 1963. The

judgment and the Department of Revenue's Final Assessment were satisfied on February 25, 1970 by Pennwalt's payment of $87,407.10, which amount included $34,493 in Use Tax, penalty and interest assessed on sales to the Sanitary District under Contract No. 58–17 during the period January 1, 1962 to March 23, 1963. The Sanitary District had no notice of, nor did it participate in, the proceedings before the Circuit Court.

The plaintiff, in support of its motion for summary judgment, contends:

1. The Sanitary District's 1961–1963 purchases from Pennwalt were subject to Illinois Use Tax.

2. The Sanitary District is primarily liable for paying the Use Tax to the state.

3. Pennwalt's payment of the tax subrogated it to the state's right against the Sanitary District.

4. The affirmative defenses advanced by the Sanitary District are without merit.

The defendant, in opposition to the instant motion for summary judgment, contends:

1. The general release signed by Pennwalt bars the plaintiff's action.

2. The statute of limitations bars the plaintiff's action.

3. The plaintiff's claim should be barred because the plaintiff violated the Sanitary District's due process right by depriving the Sanitary District of notice of the proceeding by the Department of Revenue.

It is the opinion of this Court that summary judgment should be granted in favor of the plaintiff.

## I. THE SANITARY DISTRICT IS PRIMARILY LIABLE FOR PAYING THE USE TAX TO THE STATE OF ILLINOIS ON ITS 1961–1963 PURCHASES FROM PENNWALT.

The Sanitary District has steadfastly maintained in this case that no use tax was due the State of Illinois on its 1961–1963 purchases from Pennwalt because the contract for such materials was executed at a time when the Sanitary District was exempt from the use tax.

The provisions of the Illinois Use Tax Act (Ill.Rev.Stat. Chap. 120 § 439.1 et seq.) which imposes a tax on the purchase of tangible personal property is complemented by the provisions of the Retailer's Occupation Tax Act which imposes a tax of equal rate on "persons engaged in the business of selling tangible personal property at retail." [1] Except for the period of August 1, 1961 to March 23, 1963 governmental bodies were generally exempt from both types of tax (Ill.Rev.Stat. Chap. 120 §§ 439.3, 441).

Consistent with the statutory criteria for tax liability of "ownership" and "transfer" thereof, the Illinois Department of Revenue has ruled that the date of actual delivery, rather than the date of mere contracting for purchase and sale, is the critical date in determining whether the "governmental body" exemption applies:

"Sales made on or after March 21, 1963, to a governmental body (Federal, State, local or foreign), or to any agency or instrumentality of a governmental body, are exempt from the retailers' occupation tax [and the corresponding use tax].

For the foregoing purposes, *the date of sale is considered to be the date of delivery to the purchaser.*" [Rules and Regulations Relating to the Retailers' Occupation Tax Act of

---

1. See generally Ill.Rev.Stat. Chap. 120, § 440 et seq. " 'Sale at retail' means any transfer of the ownership of or title to tangible per-

sonal purchaser, for the purpose of use or consumption. . . ." Id. at § 440.

1962, Rule 40, 1 CCH State Tax Reporter: Illinois Para. 60–143 (1969) (emphasis added).]

The Illinois Supreme Court has held that a seller of gravel and crushed stone to a county government was liable for the Retailers' Occupation Tax on sales contracted before but delivered after August 1, 1961, the date on which the "governmental body" exemption from Retailers' Occupation and Use Taxes was temporarily repealed. Western Ill. Stone Co. v. Department of Revenue, 35 Ill.2d 275, 220 N.E.2d 207 (1966). Given the complimentary nature of the Illinois Retailers' Occupation Tax and the Illinois Use Tax it would logically seem to follow that in the instant action a purchaser who is a governmental body is liable for Use Tax on the purchase of tangible personal property contracted before but delivered after August 1, 1961, because it is the law in force at the time of delivery of the property that is determinative of whether any exemption is applicable.

The defendant Sanitary District, when it was to its advantage to do so, recognized this principle that the time of delivery rather than the time of contracting governs the application of the governmental body exemption to the Use Tax.[2]

The Illinois statute imposing the Use Tax makes it clear that payment of the tax is the primary obligation of the purchaser running directly to the state:

"The tax hereby imposed shall be collected from the purchaser by a retailer maintaining a place of business in this State or a retailer authorized by the Department pursuant to Section 6 hereof, and remitted to the Department, pursuant to Section 9 hereof.

The tax imposed and not paid to a retailer pursuant to the preceding paragraph of this Section shall be paid to the Department directly by any person using such property within this State, pursuant to the provisions of Section 10 hereof." Illinois Revised Statutes, Chapter 120, § 439.3.

The Illinois Supreme Court has interpreted this statute to provide that primary liability is incurred by the one who purchases for use, and the seller's failure to collect the tax cannot operate to discharge the purchaser's liability. Klein Town Builders, Inc. v. Department of Revenue, 36 Ill.2d 301, 222 N.E.2d 482 (1966). Thus, it is clear that the Sanitary District is primarily liable for paying the Use Tax to the State of Illinois on its 1961–1963 purchases from Pennwalt.

## II. PENNWALT'S PAYMENT OF THE TAX SUBROGATED IT TO THE STATE'S RIGHT AGAINST THE SANITARY DISTRICT.

By paying the tax judgment entered against it Pennwalt discharged the primary legal obligation of the Sanitary District to pay use taxes to the state. Pennwalt thereby became subrogated to the right of the state to collect that tax from the Sanitary District.

The doctrine of subrogation originated in equity, but is presently an integral part of the common law, and is designed to place the ultimate responsi-

---

2. In a form letter which the Sanitary District sent to its vendors, including Pennwalt, it stated, in relevant part:

"This is to advise you that Governor Otto Kerner on March 21, 1963 signed into law certain emergency bills . . . whereby the law was amended to exempt and exclude the State of Illinois and other governmental bodies from the Retailers' Occupation Tax Act and other related acts. This exemption and exclusion applies to the Sanitary District.

According to said amended law materials, supplies and purchases of other commodities delivered to the Sanitary District on and after March 1, 1963 will not be subject to any of the aforementioned taxes even though the contracts for the said materials and supplies were entered into before that date."

See Stipulation of Facts, Paragraph 14, and Exhibit E.

bility for a loss upon the one on whom in good conscience it ought to fall, and to reimburse the innocent party who is compelled to pay.[3]

A person who, not acting voluntarily, pays taxes for which another is legally or equitably bound is entitled to recover upon the doctrine of subrogation. See Lidster v. Poole, 122 Ill.App. 227 (1905).[4] In order to entitle one to recover in such a case it is not necessary that he pay the tax under duress of person or property, or by compulsion of legal proceedings. It is sufficient if he does so to relieve himself from legal liability for the tax paid.[5]

Since, in the instant action, the liability of the plaintiff for the use tax is only secondary and the liability of the defendant for the use tax is primary, it follows that the tax should have been paid by the defendant rather than the plaintiff. The plaintiff stands in a position analogous to that of a surety for the defendant. The fact that the defendant's liability for the use tax was extinguished when plaintiff paid it to the state does not prevent the plaintiff from bringing this instant action against the defendant. The liability of defendant to plaintiff is not upon the tax, but is implied by law from the circumstances of the case, and arises only when the plaintiff rather than defendant has paid the use tax. Thus, Pennwalt's payment of the use tax subrogated it to the state's right against the Sanitary District and prevents the unjust enrichment of the Sanitary District at the expense of Pennwalt.

## III. THE GENERAL RELEASE, SIGNED BY PENNWALT, DOES NOT BAR THE INSTANT ACTION.

The Sanitary District contends that the general release signed by Pennwalt bars the plaintiff's action. The Sanitary District further contends that the law has long been settled that a general release will bar a plaintiff from suing on even those actions which were unknown to and concealed from the plaintiff at the time of signing the release. It is the opinion of this Court that the defendant's contentions are without merit.

The law in Illinois and in other jurisdictions is clear that a release, no matter how broad its terms, does not include claims not within the contemplation of the parties. As early as the nineteenth century, the Illinois Supreme Court held that a general release is inapplicable to unknown claims. Todd v. Mitchell, 168 Ill. 199, 48 N.E. 35 (1897). It is well settled that a court of equity will not allow the releasee to take advantage of the general words of a release to defeat the collection of a demand not then in the minds of the parties. Butcher v. United Elec. Coal Co., 174 F. 2d 1003 (7th Cir. 1949); Keeran v. Wahl Co., 320 Ill.App. 457, 51 N.E.2d 598 (1943). Since the release that the Sanitary District imposed on Pennwalt was intended to cover only "performance of the contract" it would not be construed under Illinois law to cover an unrelated matter such as use tax liability. Further, the contentions of the Sanitary

---

3. Generally speaking, the doctrine of subrogation is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter. Bennett v. Preferred Accident Insurance Co. of New York, 192 F.2d 748 (10th Cir. 1951); Geneva Construction Co. v. Martin Transfer & Storage Company, 4 Ill.2d 273, 122 N.E.2d 540 (1954).

4. In that case the Illinois Supreme Court held that a party paying taxes on realty to protect a lien thereon was subrogated to the right of the state to collect the tax.

5. In Brantjen & Kluge, Inc. v. Fincher, 44 Cal.App.2d Supp. 939, 111 P.2d 979 (1941), a case similar to the instant action, the California state court held that the plaintiff who paid the use tax for the defendant was entitled to recover upon the doctrine of subrogation.

District have ignored the fact that Pennwalt's claim is based on the Illinois use tax statute and not on performance of the contract. In reality, Pennwalt's claim is not really its own, but rather the claim of the Department of Revenue to which Pennwalt was subrogated. It has been held that a general release does not bar an action based on subrogation. Tibbetts Contracting Corp. v. O & E Contracting Company, 15 N.Y.2d 324, 258 N.Y.S.2d 400, 206 N.E.2d 340 (1965). At the time the release was executed, both Pennwalt and the District believed that the use tax issue had been long since resolved, and that the only "consideration" for the release was the balance due under the contract.[6] Under such circumstances it must be concluded that the liability of defendant asserted by the plaintiff was beyond the contemplation of the parties and that, therefore, they could not have intended the release to include it.[7]

▮ Thus, it is clear that Pennwalt's claim is not barred by the general release.[8]

## IV. THE INSTANT ACTION IS NOT BARRED BY THE STATUTE OF LIMITATIONS

▮ The Sanitary District contends that Pennwalt's cause of action commenced upon the Sanitary District's refusal to pay Pennwalt the use tax and that therefore the ten-year statute of limitations has run. Any cause of action which may have arisen upon the District's refusal to pay the tax to Pennwalt was separate and distinct from the cause of action that arose upon Pennwalt's payment of the tax. The present action arises not from the contract for the purchase of ferric chloride but rather from Pennwalt's payment of a judgment entered against it in accordance with a state statute imposing a use tax measured by the Sanitary District's purchases of tangible personal property. This subrogation action is thus one of implied assumpsit for money paid and to prevent the unjust enrichment of the defendant. Illinois case law firmly establishes that in such actions the statute of limitations begins running when the payment is made. Rath v. City of Chicago, 207 Ill.App. 117 (1917); Flower v. Beveridge, 58 Ill.App. 431, aff'd 161 Ill. 53, 43 N.E. 722 (1895). See also Brantjen & Kluge, Inc. v. Fincher, 44 Cal.App. 2d Supp. 939, 111 P.2d 979 (1941).[9] Since Pennwalt paid the use tax judgment on February 25, 1970 and filed this action on July 19, 1972, Pennwalt's claim clearly is not barred by the ten-year statute of limitations pleaded by the Sanitary District.

6. See the Stipulation of Facts, Paragraphs 12 and 16.

7. There is abundant authority to support the plaintiff's contention that the Sanitary District's position regarding the general release is without merit. See, e. g., United States v. Ramstad Constr. Co., 194 F.Supp. 379 (D.Alaska 1971); Tupper v. Massachussetts Bonding & Ins. Co., 156 Minn. 65, 194 N.W. 99 (1923); Zurich Gen. Acc. & Liability Ins. Co. v. Klein, 181 Pa.Super. 48, 121 A.2d 893 (1956); Cahill v. Regan, 5 N.Y.2d 292, 184 N.Y.S.2d 348, 157 N.E.2d 505 (1959).

8. Pennwalt has added an independent, although related reason why its claim is not barred by the general release. The $14,658.-50 "consideration" recited in the release has been stipulated to represent only the "undisputed balance due Pennwalt" for purchases by the District (Stipulation of Facts, Paragraph 13). This fact, of course, supports the argument that Pennwalt's claim was not contemplated by the parties when the release was given and that the release was not meant to include claims unrelated to performance of the contract. It also, however, provides sound basis for holding the release totally invalid, for under Illinois law a release given without consideration is void and the payment of an amount undisputably due does not constitute consideration. See Toffenetti v. Mellor, 323 Ill. 143, 153 N.E. 744 (1926); Salvaggio v. Schafroth, 133 Ill.App. 2d 811, 272 N.E.2d 53 (1971); Farmers & Mech. Life Assn. v. Caine, 224 Ill. 599, 79 N.E. 956 (1906).

9. The above stated rule is similar to the rule used in the analogous context of contribution. See Harris v. Buder, 326 Ill.App. 471, 62 N.E.2d 131 (1945); Whittemore v. Weber, 217 Ill.App. 628 (1920); Siegil v. Fish, 129 Ill.App. 319 (1906).

## V. PENNWALT'S CLAIM DOES NOT DENY THE SANITARY DISTRICT DUE PROCESS OF THE LAW.

The Sanitary District finally contends that it was deprived of due process by Pennwalt's failure to notify it of the Department of Revenue's action to collect the use tax. Further, the Sanitary District contends that it is entitled to its day in court and that prior judgments are not binding on it since it has not been made a party to them. This contention of the defendant is also without merit. The Sanitary District is presently a party to the instant action and it is now having its day in court to litigate the issue of its use tax liability. The right to due process in no way allows a defendant to prevent a plaintiff from litigating a claim against that defendant in the first instance. In the instant action the Sanitary District is not bound by prior determinations of issues by the state court but neither is the Sanitary District immune from ever being sued on a claim related to it. Thus, both Pennwalt and the Sanitary District in the instant action have received their day in court.

Accordingly, the plaintiff's motion for summary judgment in its favor is granted.