■ LAWRENCE A. OBSTFELD et al., Respondents, v THERMO NITON ANALYZERS, LLC, et al., Appellants. [977 NYS2d 371]—

In an action, inter alia, to recover damages for breach of contract, the defendants appeal, as limited by their notice of appeal and their brief, from so much of an order of the Supreme Court, Kings County (Demarest, J.), dated April 9, 2012, as denied those branches of their motion which were for summary judgment dismissing the third and fourth causes of action.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and those branches of the defendants' motion which were for summary judgment dismissing the third and fourth causes of action are granted.

On December 3, 2001, the plaintiff Morningside Capital Group (hereinafter Morningside), by its managing partner, the plaintiff Lawrence A. Obstfeld, entered into an agreement (hereinafter the Agreement) with the defendants' predecessor in interest, Niton Corporation (hereinafter Niton). Under the Agreement, Morningside agreed to assist Niton, on an exclusive basis, as a financial advisor for the purpose of finding a joint venture partner, a strategic investor, or some other business combination. The Agreement provided, inter alia, that it "shall be cancelable on sixty days notice by either party after August 1, 2002."

In September 2002, the parties entered into an addendum to the Agreement (hereinafter the Addendum) which stated, inter alia, that Morningside was granted "the exclusive right to act as financial advisor for Niton for the next two rounds of institutional fundraising following the present round, as well as for any investment or merger/acquisition transaction or IPO." The Addendum concluded by stating that "this addendum shall supersede any inconsistencies between the addendum and the December 3 agreement." Significantly, however, the Addendum made no reference to the provision in the Agreement which allowed for cancellation upon 60 days notice.

By letter dated June 6, 2003, Niton's attorney wrote a letter to Morningside which, inter alia, stated: "I am writing on behalf of Niton to inform Morningside formally of the decision of Niton not to continue to work with Morningside any more under the letter agreement dated 12/3/01, as revised by the latter agreement dated 9/6/02 . . . [T]his letter will serve as formal notice from Niton of termination to become effective at the earliest possible date."

Approximately two years later, in March 2005, Niton was acquired by Thermo Fisher Scientific, Inc. Niton was renamed Thermo Niton Analyzers, LLC, and became a subsidiary of

Thermo Fisher Scientific, Inc. (hereinafter together Thermo). In November 2005, Morningside sent Thermo a demand for payment under the Agreement in reference to its acquisition of Niton. Morningside sought, inter alia, a cash fee of approximately $1.247 million. By letter dated April 5, 2006, Thermo rejected the demand, stating, inter alia, that the Agreement had been terminated in accordance with its terms by the letter dated June 6, 2003, and that Morningside had no involvement in the acquisition. Morningside responded, stating, inter alia, that, pursuant to the Addendum, the Agreement could not be terminated prior to the completion of the third round of fundraising or an alternative transaction, including Niton's acquisition by Thermo.

On June 9, 2009, Obstfeld and Morningside commenced this action against Thermo to recover payments allegedly due pursuant to the Agreement. The complaint asserted four causes of action. The first two causes of action were brought by Obstfeld alleging conversion and unjust enrichment. The third and fourth causes of action, relevant here, were brought by Morningside, alleging breach of contract for failure to pay the acquisition fee. In December 2011 moved for summary judgment dismissing the complaint. In an order dated April 9, 2012, the Supreme Court, inter alia, denied the motion.

"[A] contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself. Consequently, 'a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms' " (*MHR Capital Partners LP v Presstek, Inc.*, 12 NY3d 640, 645 [2009], quoting *Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). A contract is ambiguous if the terms are "reasonably susceptible of more than one interpretation" (*Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]; *see Evans v Famous Music Corp.*, 1 NY3d 452, 458 [2004]). Whether a contract is ambiguous is a question of law to be resolved by the court (*see W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]; *JP Morgan Chase Bank, N.A. v Cellpoint Inc.*, 54 AD3d 366 [2008]). Where a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent (*see Greenfield v Philles Records*, 98 NY2d at 569).

Contrary to the plaintiffs' contention, the Agreement, as amended by the Addendum, was not ambiguous with respect to the issue of whether termination was permitted upon 60 days' notice. Although the Addendum gave Morningside the exclusive right to act as Niton's financial advisor for further fundraising, including a possible merger or acquisition, the Addendum in no

way abrogated the provision in the Agreement that the parties could end their relationship upon 60 days' written notice, and thus was not ambiguous (*see generally White v Continental Cas. Co.*, 9 NY3d 264, 267 [2007]). In addition, the terms of the Addendum were not inherently inconsistent with the cancellation provision of the Agreement such that there was need to rely upon the final provision in the Addendum, which stated that the Addendum would "supersede any inconsistencies between the Addendum and the Agreement."

Accordingly, the letter dated June 6, 2003, from Niton to Morningside, which clearly stated that it was "formal notice of termination," operated to cancel the Agreement by its own terms no later than 60 days thereafter, or August 6, 2003. Therefore, the defendants established their prima facie entitlement to judgment as a matter of law with respect to the third and fourth causes of action, which sought payment for an alleged breach of contract based upon transactions that took place after the Agreement had been terminated. In opposition to this showing, the plaintiffs failed to raise a triable issue of fact with respect to termination of the Agreement. In addition, the plaintiffs failed to raise a triable issue of fact regarding their allegation that Morningside rescinded its termination of the Agreement subsequent to the June 6, 2003, letter (*see generally Tibbetts Contr. Corp. v O & E Contr. Co.*, 15 NY2d 324, 338 [1965]). Consequently, the Supreme Court should have granted those branches of the defendants' motion which were for summary judgment dismissing the third and fourth causes of action (*see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]). Dillon, J.P., Sgroi, Cohen and Miller, JJ., concur.