(No. 33103.—

GENEVA CONSTRUCTION COMPANY *et al.,* Appellees, *vs.* MARTIN TRANSFER AND STORAGE COMPANY, Appellant.

*Opinion filed November 18, 1954.*

ECKERT, PETERSON & LOWRY, of Chicago, and ALLEN, MATTHEWS, JORDAN & DEAN, of Aurora, (EVERETT JORDAN, JOSEPH T. SUHLER, HAROLD W. HUFF, and HERBERT C. LOTH, JR., of counsel,) for appellant.

WILLIAM C. O'BRIEN, of Aurora, (DONALD L. PUCKETT, WILSON D. BURNELL, and JOSEPH H. BARNETT, of counsel,) for appellees.

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

This court has allowed the petition for leave to appeal of defendant, Martin Storage and Transfer Company, from

a judgment of the Appellate Court, affirming a judgment of the circuit court of Kane County entered in favor of plaintiffs, Geneva Construction Company and its employee, Frank J. Powers, in the amount of $15,000, for personal injuries sustained by Frank J. Powers.

This appeal presents essentially two questions of law: first, whether, under the status of the law after the first paragraph of section 29 of the Workmen's Compensation Act (Ill. Rev. Stat. 1947, chap. 48, par. 166,) was held unconstitutional, and prior to the 1953 amendments thereto, an employer could recover, from a third-party tort-feasor operating under the act, the amount of compensation the employer paid to the injured employee; and secondly, whether, under the terms of section 46 of the Civil Practice Act, an employee injured by a third-party tort-feasor under the Workmen's Compensation Act can assert a common-law claim for damages against such party more than four years after the injuries were sustained, by filing an amendment and joining in the employer's action against the tort-feasor, which had been instituted in the proper time.

According to the stipulated facts, on May 24, 1948, plaintiff Frank J. Powers sustained accidental injuries arising out of and in the course of his employment with the plaintiff Geneva Construction Company, a corporation bound by the Workmen's Compensation Act, which injuries were negligently caused by defendant, Martin Transfer and Storage Company, a corporation also operating under the act. The employer, Geneva Construction Company, was compelled to pay Frank J. Powers workmen's compensation in the amount of $3706.83. On May 18, 1950, the Geneva Construction Company instituted proceedings against defendant under the provisions of paragraph 1 of section 29 of the Workmen's Compensation Act to recover the amount of compensation paid Frank J. Powers.

On March 20, 1952, that provision of the act was held unconstitutional by this court in *Grasse* v. *Dealer's Trans-*

*port Co.* 412 Ill. 179; and on May 29, 1952, more than two years after the filing of the original complaint, and more than four years after the date of the accident, Frank J. Powers filed a petition for leave to intervene as an additional plaintiff, which was allowed. The circuit court thereupon gave Powers and Geneva Construction Company leave to file instanter an amended complaint, wherein Geneva Construction Company was the sole plaintiff in counts I and II, Geneva Construction Company and Frank J. Powers were joint plaintiffs in count III, and Powers alone asserted a cause of action in count IV. After trial on the amended complaint, judgment was entered on a joint verdict in favor of both plaintiffs in the sum of $15,000. The Appellate Court affirmed that judgment, (*Geneva Construction Co.* v. *Martin Transfer and Storage Co.* 351 Ill. App. 289,) and on January 13, 1954, this court granted leave to appeal therefrom.

In determining the propriety of the judgment of the Appellate Court we shall consider first whether plaintiff Geneva Construction Company could properly recover from defendant Martin Transfer and Storage Company the amount of workmen's compensation paid an employee as a result of defendant's negligence.

The accident upon which the rights of the plaintiffs herein are predicated occurred in 1948. At that time the first paragraph of section 29 of the Workmen's Compensation Act governed the rights of the parties under the circumstances herein. Under that paragraph, it had been held the employee's common-law action for damages was transferred to his employer (*O'Brien* v. *Chicago City Railway Co.* 305 Ill. 244,) who was entitled to institute proceedings and recover from such tort-feasor the amount of compensation the employer was obliged to pay the employee under the act, provided the employer established the negligence of the third-party tort-feasor, freedom from contributory negligence, damages suffered by the injured

employee, and the fixed amount of compensation the employer was required to pay. *City of Taylorville* v. *Central Illinois Public Service Co.* 301 Ill. 157.

The original complaint, filed in 1950 by plaintiff Geneva Construction Company was predicated upon that statutory provision. However, in *Grasse* v. *Dealer's Transport Co.*, determined in March, 1952, this court held, in a proceeding for common-law damages by an injured employee against a third-party tort-feasor bound by the act, that paragraph 1 of section 29 was unconstitutional on the ground that it violated the due process and equal protection of law clauses of the State and Federal constitutions by creating an unreasonable classification between employees injured by tort-feasors bound by the act and employees injured by tort-feasors not under the act. Employees injured by tort-feasors under the act could recover only workmen's compensation benefits from their employers, whereas employees injured by tort-feasors outside the act could recover common-law damages from such negligent tort-feasors, and, therefore, the court held there was no reasonable relation between that classification established by the statute and the statutory objective.

The legal effect of declaring that provision of the act unconstitutional was to relegate the parties to such rights as obtained prior to the enactment of the unconstitutional provision. (*People* v. *Schraeberg,* 347 Ill. 392.) Consequently, the court held that the employee in the *Grasse case* was entitled to assert a common-law claim for damages for injuries inflicted by the third-party tort-feasor. The rights of the employer were not involved in that proceeding, but it was apparent that if paragraph 1 of section 29 were unconstitutional, there would be no statutory right of subrogation for the employer whose employee was injured by a third-party tort-feasor bound by the act. It was therefore argued in the *Grasse case* that holding paragraph 1 of section 29 unconstitutional was objectionable on the ground

that it created an unreasonable classification among employers, inasmuch as only those whose employees were injured by persons *not* bound by the act would have a right of subrogation under the valid second paragraph of section 29.

The court in the *Grasse case,* while cognizant of the principles of constitutional law that a court is obliged to adjudicate the constitutionality of a statute only to the extent required by the case before it and that it is the province of the legislature to correct any inequalities arising as a result of the decision, endeavored, nevertheless, to resolve all the arguments submitted, and by way of dictum, stated, at page 201 : "The effect of our determination is to render the provision void, and to relegate the parties to such rights as they may have had prior to the enactment of the unconstitutional provision. [Citation.] Under those circumstances, the rights of the parties would be governed by common-law subrogation principles, and the non-negligent employer who had paid compensation would be entitled to be subrogated to the rights of the employee against the third party tort-feasors."

Plaintiff Geneva Construction Company relies upon that dictum as determinative of this issue in the case, whereas defendant argues that the dictum was not in accordance with the prevailing judicial opinion, and that plaintiff has no common-law right of subrogation.

The remedy of common-law subrogation in workmen's compensation cases is largely academic, inasmuch as the vast majority of States have varying statutory provisions giving the employer or insurer who pays compensation to an employee injured by a third-party tort-feasor recourse against the wrongdoer. (35 Minn. L. Rev. 654; 38 Harv. L. Rev. 972.) Although the 1953 amendments to the Illinois Workmen's Compensation Act (Ill. Rev. Stat. 1953, chap. 48, par. 138.5,) now provide a mode of statutory subrogation for employers, this cause must be adjudicated under the law prevailing prior thereto.

In jurisdictions where the employer's common-law rights of subrogation against third-party tort-feasors have been considered, there is a conflict in the decisions and rationale of the courts. The employer has been allowed to recover from the tort-feasor the amount of compensation paid, in numerous cases in the absence of a statutory subrogation provision (83 C.J.S. 616; 71 C.J. 1548; *Travelers Ins. Co.* v. *Great Lakes Engineering Co.* 184 Fed. 426; *Jones* v. *Waterman,* 155 Fed. 2d 992, 1001; *Busch & Latta Paint Co.* v. *Woerman Construction Co.* 276 S.W. 614, 310 Mo. 419; *Fidelity & Casualty Co. of N. Y.* v. *St. Paul Gas Light Co.* 188 N.W. 265, 152 Minn. 197; *Staples* v. *Central Surety & Ins. Corp.* 62 Fed. 2d 650; *Travelers Ins. Co.* v. *Northwest Airlines,* 94 Fed. Supp. 620; *Washington Gas Light Co.* v. *District of Columbia,* 161 U.S. 316;) and recovery has been denied the employer in another group of cases. *Crab Orchard Improvement Co.* v. *C. & O. Railway Co.* 115 Fed. 2d 277; *McCullough* v. *Varick Co.* 10 Atl. 2d 245, 90 N.H. 409; *Newark Paving Co.* v. *Klotz,* 91 Atl. 91, 85 N.J.L. 432; *Texas & Pac. Railway Co.* v. *Archer,* 203 S.W. 796, (Texas); *Interstate T. & T. Co.* v. *Public Service Electric Co.* 90 Atl. 1062, 86 N.J.L. 26.

All of these cases, however, predicated on diverse statutory provisions and constructions, are of limited persuasive value, particularly under the unique status of the law in Illinois, where the legislature had declared a subrogation policy for employers but the provisions were held unconstitutional in part.

Defendant, nevertheless, has placed great reliance upon the case of *Crab Orchard Improvement Co.* v. *C. & O. Railway Co.* 115 Fed. 2d 277, in support of his contention that plaintiff Geneva Construction Company is not entitled to recover the amount of compensation paid its employee.

Although the Federal court purportedly declared the common-law rule in the absence of a statutory provision

relating to subrogation, actually, it was merely resolving the rights of the parties under a West Virginia statute which had been construed to permit an employee to retain both the compensation award and all damages due from the third-party tort-feasor; consequently, the court was constrained to hold that the employer could not recover the amount of compensation paid from the third-party tort-feasor, since such recovery would, in effect, force double liability on the tort-feasor.

No such double liability could be involved under the Illinois Workmen's Compensation Act, since it has been construed not to permit an employee to retain both compensation and damages. (*O'Brien* v. *Chicago City Railway Co.* 305 Ill. 244.) Hence, the determinative factor in the Federal court's denial of recovery is not present in the instant case. In fact, the court in the *Crab Orchard case* expressly distinguished the situation where only one recovery is allowed the employee, as in Illinois. At page 283, the court stated: "We recognize that there are equities which favor here the contention of appellant. The underlying philosophy which has motivated the enactment of Workmen's Compensation Acts would appear to be best subserved when, under such a statute, the ultimate loss is made to fall on the third party tort-feasor rather than on the innocent employer, and the injured employee is given only one satisfaction (not two satisfactions) for a single wrong. But the West Virginia Act was not drawn to carry out such a philosophy."

Not only are the compensation statutes and their constructions materially different in the *Crab Orchard* and the instant cases, but we cannot accept the further reasoning of the Federal court that such compensation cases are analogous to life insurance contracts where insurers are denied common-law subrogation rights. The court reasoned that inasmuch as the amount paid the injured workman is determined according to an arbitrary scale, without regard

to the detriment actually suffered, and since there is the same difficulty appraising the value of human suffering and human life in compensation cases as in life and accident insurance policy cases, the rule in those cases should be applied.

We find more cogent the interpretation that inasmuch as the object of workmen's compensation acts is in reality to indemnify the injured employee for pecuniary loss sustained, since his average weekly earnings are commonly made the basis on which benefits are computed, the status of the employer is more comparable to that of an insurer in fire and marine policies than under life and accident insurance policies, which are essentially legally permissible wagers on the duration of life or the happening of an accident. (Hardman, Common Law Right of Subrogation Under Workmen's Compensation Acts, 26 W. Va. L. Q. 183; Vance, Ins., p. 680.) Although the compensation granted under the act may not be full indemnity for every form of injury, neither is the sum paid under a fire or other indemnity policy necessarily full indemnity, since the amount payable is limited by the terms of the policy—the Workmen's Compensation Act being in practical effect the policy and providing against loss in capacity to work, just as a fire insurance policy may provide against only certain kinds of loss. Furthermore, the fact that the measure of damage may be different in the common-law action and in the claim for compensation should not render the principle of subrogation inapplicable, for the measure of damages in an action on a fire insurance policy may be different from the measure of damages against the tort-feasor who caused the fire, yet subrogation is permitted in those cases. Therefore, if the fire or marine insurance company, which pays for the loss, is, without the aid of a statute, subrogated *pro tanto* to the rights of the insured against the tort-feasor, by parity of reasoning, the employer who pays the injured employee compensation should likewise be sub-

rogated *pro tanto* to the rights of the employee against such wrongdoer.

Irrespective of the appropriateness of either analogy, however, the issue of whether common-law subrogation should be applied on behalf of employers in compensation cases should be determined independently and without reference to the techniques of analogy to other types of insurance.

On the basis of the foregoing reasons, the *Crab Orchard case* cannot be deemed determinative of this issue. The other cases cited by defendant in support of its contention that plaintiff Geneva Construction Company is not entitled to recover the amount of compensation paid its employee are either predicated upon distinguishable statutes, allowing employees double recovery, or upon the application of the analogy to the life insurance cases or on the ground that the legislature did not intend to grant such rights. Therefore, we are not constrained to regard those cases as binding precedent; nor can we prolong this opinion by analysis of the distinguishing statutory provisions in each case.

In Illinois, as hereinbefore noted, the precise issue of whether an employer had common-law subrogation rights against a third-party tort-feasor for the amount of compensation paid could not have arisen prior to the *Grasse case,* since such rights were defined in section 29 of the Workmen's Compensation Act. There is, however, some intimation in the case law, even prior to the dictum in the *Grasse case,* that there was a right of subrogation.

In *DeWit Co.* v. *Central Lime and Cement Co.* 250 Ill. App. 161, the court stated, at page 164: "Even though a suit by the insurance company as subrogee, or by the plaintiff [the employer] for the use of the insurance company, might have been brought [against the third-party tort-feasor], it does not follow that plaintiff did not have the

right to avail itself of the power given by paragraph 229 [section 29 of the Workmen's Compensation Act]."

Apart from these *dicta,* it is apparent that the issue is one of first impression in this jurisdiction and must be determined in terms of the essential elements of the doctrine of subrogation. This legal concept originated in equity, but is presently an integral part of the common law, and is designed to place the ultimate responsibility for a loss upon the one on whom in good conscience it ought to fall, and to reimburse the innocent party who is compelled to pay. Under this doctrine, a person who, pursuant to a legal liability, has paid for a loss or injury resulting from the negligence or wrongful act of another, will be subrogated to the rights of the injured person against such wrongdoer. 83 C.J.S. 616; *Smith* v. *Clavey Ravinia Nurseries Inc.* 329 Ill. App. 548; *Bennett* v. *Preferred Accident Insurance Co. of New York,* 192 Fed. 2d 748, 751; Vance, Ins., 672-680; 71 C.J. 1548.

The Illinois courts have recognized the broad purview of this doctrine. (*Cherry* v. *Aetna Casualty & Surety Co.* 372 Ill. 534; *Smith* v. *Clavey Ravinia Nurseries,* 329 Ill. App. 548.) Although the decision in the *Ravinia Nurseries case,* cited by plaintiff, is in no way determinative of the issue. herein, since it involved a subrogation proceeding by the administrator of the Wisconsin compensation fund, out of which compensation was paid where an insurance carrier was insolvent and failed to pay the employee's award against the employer; nevertheless, the court therein recognized that common-law subrogation could be applied in workmen's compensation cases where the essential elements of that doctrine were involved.

In workmen's compensation cases, where the non-negligent employer has been required to pay compensation under the terms of the statute to an employee injured by a third-party tort-feasor, that loss should fall ultimately upon the

wrongdoers responsible for it. If the non-negligent employer is deprived of his right of subrogation, it would result in the unjust enrichment of the employee, who could retain both compensation and damages, thereby violating a basic tenet of the common law that there may not be a double satisfaction for the same wrong. In fact, that common-law principle has been deemed to be the basis for the enactment of the various statutory subrogation provisions. (26 W. Va. L. Q. 183, 184; *Miller v. New York Railways Co.* 171 App. Div. 316, 157 N.Y.S. 200.) If the employer is allowed a right of subrogation, all parties will have been duly paid, no one paid twice or imposed with double liability, and the loss will fall upon the only party at fault, in accordance with the equitable objectives of the doctrine. (Vance, Insurance, 680.) Moreover, allowing the non-negligent employer subrogation rights would also be in accordance with the legislative policy of protecting the rights of the employer, as evidenced by section 29 of the Workmen's Compensation Act, and would be consistent with the remaining valid subrogation provisions of the act.

On the basis of that analysis, it is our judgment that the dictum in the *Grasse case* was in accordance with law, and the Appellate Court did not err in holding that the plaintiff Geneva Construction Company was entitled to assert a claim against defendant for the amount of workmen's compensation paid, under the doctrine of common-law subrogation. We cannot agree, however, with the conclusion of the Appellate Court that the provisions of section 22 of the Civil Practice Act (Ill. Rev. Stat. 1951, chap. 110, par. 146,) have no application herein. Section 22 provides: "Any civil action hereafter brought under or by virtue of the subrogation provision of any contract or under or by any subrogation by operation of law shall be brought either in the name of, or for the use of the subrogee; provided, the subrogee shall in his pleading on oath, or by his affidavit where pleading is not required, allege that he is

the actual *bona fide* subrogee, and set forth how and when he became such subrogee."

Prior to the *Grasse case* this section was held inapplicable to the employer's action to recover from a third-party tort-feasor the amount of workmen's compensation paid an employee on the ground that such rights were governed by section 29 of the Workmen's Compensation Act. (*DeWit Co. v. Central Lime and Cement Co.* 250 Ill. App. 161; *Brennan Construction Co. v. Blair,* 261 Ill. App. 9.) However, inasmuch as paragraph 1 of section 29 has been held unconstitutional, the employer's right to recover from the tort-feasor the amount of workmen's compensation paid an employee can no longer be predicated on that provision. If such rights are asserted under the doctrine of subrogation by operation of the law, there should be a proper compliance with the rules governing the presentation of such rights, irrespective of whether the subrogation is *pro tanto* or of the entire claim.

Plaintiff Geneva Construction Company amended its complaint herein after the *Grasse case* was decided, and based its claim upon the other paragraphs of section 29. Although those paragraphs were inapplicable, since they did not pertain to proceedings against a third-party tort-feasor bound by the act, nevertheless, the complaint did set forth the operative facts upon which recovery under common-law subrogation could be effected, and did apprise the opposing party of the nature of the claim (chap. 110, par. 166(2),) and how and when plaintiff Geneva Construction Company became a subrogee, in partial compliance with section 22 of the Civil Practice Act.

When objection was made to the omission of verification of the complaint, plaintiff Geneva Construction Company moved to amend the complaint to comply with that requirement of section 22, but the motion was overruled. Inasmuch as that omission was essentially a formal matter, since the ultimate facts were stipulated and accepted as

true, and since the proposed amendment would not have resulted in any prejudice to defendant, or introduced any new issue, it could have been allowed under section 46(1) of the Civil Practice Act.

Furthermore, under section 92(1)(a) of the Civil Practice Act (chap. 110, par. 216(1)(a),) which provides that, "In all appeals the reviewing court may, in its discretion * * * Exercise all or any of the powers of amendment of the trial court"; and under Supreme Court Rule 50 (chap. 110, par. 259.50,) which provides that, "The reviewing court may, of its own motion, before or after submission of the case for decision, order amendment to be made," the reviewing court herein had ample authority and grounds for allowing the motion to amend the complaint so as to comply with all the requirements of section 22, and it was error to refuse to do so.

It should be noted, however, that it will not be necessary hereafter for employers asserting such claims against tort-feasors to comply with section 22 of the Civil Practice Act, since the 1953 amendments to the Workmen's Compensation Act prescribe a mode of statutory subrogation for employers. (Chap. 48, par. 138.5.) Nevertheless, as hereinbefore noted, the instant case must be adjudged under the prior law.

We turn, then, to the second question—whether the claim of plaintiff Frank J. Powers, which was first asserted by an amendment to the complaint filed more than four years after the date of the accident, is barred by the Statute of Limitations which provides that an action to recover for injuries to the person shall be commenced within two years after the cause of action accrues. (Ill. Rev. Stat. 1953, chap. 83, par. 15.) Determination of this question is governed by section 46 of the Civil Practice Act. (Ill. Rev. Stat. 1953, chap. 110, par. 170.) That section deals with amendments to pleadings and the relation back of those

amendments to the time of the filing of the original pleading to avoid the impact of statutes of limitations.

The present section 46 is the culmination of continuing efforts on the part of the General Assembly to enact a provision under which the relation back of an amended pleading would be governed by considerations of fairness to the litigants, rather than by technical and formal considerations of the identity of causes of action at common law. The history of those legislative efforts is set forth in *Metropolitan Trust Co.* v. *Bowman Dairy Co.* 369 Ill. 222, and need not be repeated here.

Section 46 provides:

"(1) At any time before final judgment in a civil action, amendments may be allowed on such terms as are just and reasonable, introducing any party who ought to have been joined as plaintiff or defendant, discontinuing as to any plaintiff or defendant, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross demand.

"(2) The cause of action, cross demand or defense set up in any amended pleading shall not be barred by, lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted, or the defense or cross demand interposed in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary con-

dition precedent to the right of recovery or defense asserted when such condition precedent has in fact been performed, and for the purpose of preserving as aforesaid such cause of action, cross demand or defense set up in such amended pleading, and for such purpose only, any such amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended.

"(3) A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon such terms as to costs and continuance as may be just."

Applying the test set forth in paragraph (2), it is clear that the causes of action asserted in the original and in the amended complaints "grew out of the same transaction or occurrence set up in the original pleading." The original complaint alleged the occurrence of the accident, the negligence of the defendant, and the freedom of Powers from contributory negligence. It further alleged that Powers was injured as a result of defendant's negligence, and stated in detail the nature and the extent of his injuries and the medical and hospital expenses which he incurred. It furnished to the defendant all of the information necessary to prepare its defense to the claim which was subsequently asserted by Powers in the amended complaint. Proof of all of these allegations was essential to the relief sought by Geneva Construction Company in the original complaint, and investigation of all of them was essential to a proper defense. It cannot therefore be said that the defendant was prejudiced by the amendment, which asserted no more than an additional claim for damages arising from an occurrence fully described in the original pleading. Amendments increasing the *ad damnum* have been regarded as matters of form rather than substance. (*Tomlinson* v. *Earnshaw,* 112 Ill. 311; *Huntoon* v. *Pritchard,* 371 Ill. 36; *Citizens National Bank* v. *Kesl & Sons Co.* 378 Ill. 428.) Moreover, section 34 of the Civil Practice Act now provides that the

prayer for relief shall not be deemed to limit the relief obtainable, except in cases of default. Ill. Rev. Stat. 1953, chap. 110, par. 158.

The defendant, however, forcefully argues that under the language of paragraph (1) the claim asserted by Powers in the amended complaint was not the claim for which the original complaint "was intended to be brought." It calls attention to the allegations of the original complaint which asserted the liability of Geneva Construction Co. to Powers under the Workmen's Compensation Act, and its satisfaction of that liability, as indicating that it intended to assert an original claim and not a derivative one. In considering this contention it must be borne in mind that "[P]aragraph 1, * * * prescribes what classes of amendments may be made in any process, pleading or proceedings before final judgment. It does not deal with the subject of limitations at all." (*Metropolitan Trust Co.* v. *Bowman Dairy Co.* 369 Ill. 222, 228.) The language upon which defendant relies was contained in section 39 of the Practice Act of 1907. The forerunner of the present paragraph (2) was added by amendment in 1929, and the phrase in question was carried over into section 46 of the Civil Practice Act in 1933. To hold today that the right to amend and the relation back of an amendment, when made, depend upon the subjective frame of mind of the pleader would restore the formalistic approach to amendments to pleadings which the legislature has sought to eliminate. It would minimize the realistic emphasis of paragraph (2) upon identity of "transaction or occurrence" as the touchstone of relation back. Except in the more obvious cases of misnomer, it would contradict the permission expressly granted to amend by introducing new parties plaintiff or defendant, and by discontinuing as to any plaintiff or defendant.

Statutes of limitation, like other statutes, must be construed in the light of their objectives. The basic policy of such statutes is to afford a defendant a fair opportunity to

investigate the circumstances upon which liability against him is predicated while the facts are accessible. That purpose has been fully served here. As observed by Mr. Justice Holmes in *New York Central Railroad* v. *Kinney*, 260 U.S. 340, 342, "Of course an argument can be made on the other side, but when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied."

We hold therefore that the claim asserted by Powers in the amended complaint was not barred by limitations. It follows that the judgment of the Appellate Court was correct, and that judgment is affirmed.

*Judgment affirmed.*