CLIFFORD H. GRUNLOH *et al.*, Plaintiffs-Appellants, v. EFFINGHAM EQUITY, INC., Defendant-Appellee.

Fourth District   No. 4—88—0120

Opinion filed September 13, 1988.

510

Brent D. Holmes, of Harlan Heller, Ltd., of Mattoon, for appellants.

Dale A. Cini, of Ryan, Cini & Bennett, of Mattoon, and Q. Anthony Seimer, of Parker, Seimer, Austin, Resch & Resch, of Effingham, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

The principal question in this case is whether an amendment to a complaint alleging the plaintiffs are suing in their capacities of assignees of a claim of a dissolved corporation, in addition to their individual capacities, relates back to the filing of the plaintiffs' original complaint, so that the claim which the corporation assigned is not barred by the statute which at the relevant times allowed a corporation two years from the date of its dissolution in which to file lawsuits. (Ill. Rev. Stat. 1981, ch. 32, par. 157.94.) Additional issues are whether a chose in action, which was owned by a dissolved corporation, was properly assigned to plaintiffs; whether the defendant received proper notice of the assignment; and whether a claim for punitive damages arising out of alleged damage to property is assignable by a corporation and survives a dissolution of the assignor corporation which occurs simultaneously with the assignment.

The facts are relatively simple. On July 2, 1982, plaintiffs Clifford H. Grunloh and Marian Grunloh filed a complaint against defendant Effingham Equity, Inc., which alleged that plaintiffs are the owners of a golf course and country club known as "Park Hills" located in Effingham County. Defendant was, according to the complaint, the

owner and operator of a feed, fertilizer, and chemical business located directly west of plaintiffs' property. Plaintiffs alleged Sur's Creek flows from defendant's property across plaintiffs' property and that plaintiffs constructed a pond on their property to hold water from Sur's Creek. The water from the pond was utilized for watering the greens of the golf course located on plaintiffs' property. The plaintiffs alleged defendant polluted Sur's Creek with petroleum products and other toxic chemicals and discharged toxic "exhaust scrubbers" into a tile which carried them onto plaintiffs' property and into the pond which was used for watering the greens. The plaintiffs asserted that as a result of the pollution of their pond, the pumping of water from the pond onto the greens totally destroyed the greens, causing plaintiffs to have to close the golf course. The plaintiffs further alleged that defendant's actions deprived plaintiffs of their investment in their golf course and country club and damaged the property to such an extent that no repair of the land is possible until the buildup of toxic materials in the soil has been broken down and dissipated. The plaintiffs finally alleged that they discovered the defendant's actions on or about July 1, 1981. Count I of plaintiffs' complaint alleged that defendant acted negligently in committing the above acts, which proximately caused damage to plaintiffs' property.

Count II alleged all of the above matters except for the defendant's purported negligent pollution of Sur's Creek and the pond on plaintiffs' property. In lieu of these allegations, the plaintiffs alleged that defendant wilfully and wantonly (1) discharged contaminants into the environment which caused pollution of Sur's Creek, contrary to section 12(a) of the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1012(a)); (2) failed to take any precautions in the handling of toxic materials in order to prevent pollution of Sur's Creek; (3) failed and omitted to warn plaintiffs of defendant's continuous pollution of Sur's Creek; (4) concealed its acts of pollution from plaintiffs when it knew its discharge of materials into Sur's Creek would cause permanent and irreparable damage to plaintiffs' property; and (5) continued polluting Sur's Creek after obtaining knowledge that various of its activities would damage plaintiffs' property and would create damage that would be irreparable for many years. On the basis of the allegations of count II, plaintiffs requested punitive damages in addition to the actual damages requested in count I.

The defendant filed an answer denying the crucial allegations of plaintiffs' complaint, and the parties engaged in extensive pretrial discovery. This cause was set for jury trial on June 14, 1987.

On June 12, 1987, the defendant filed a motion *in limine* alleging

that the golf course in question was owned and operated by a corporation (known from 1972 through 1976 as Grunloh Development, Inc., and from 1977 through 1981 as the Grunloh Corporation (hereinafter referred to as "the corporation")), as opposed to the individual plaintiffs, and that any losses which had occurred up to some time in 1981 which resulted from defendant's acts would be recoverable only by the corporation and not by the plaintiffs, who owned the corporation's stock. The motion further alleged allowing plaintiffs to recover for both the corporate losses prior to 1981 and their personal losses in connection with a diminution in value of the golf course property would impermissibly allow the plaintiffs to " 'stack' " claimed corporate losses on their claimed individual losses. Finally, the motion *in limine* stated that plaintiffs did not allege that they somehow acquired causes of action belonging to any corporate owner of the property in question, and that plaintiffs had no standing to assert any claims for an alleged loss of the corporation's profits or income. On this basis, defendant requested that plaintiffs be barred from placing before the jury any claims for losses suffered by the corporation during its operation of the golf course.

At a hearing held June 15, 1987, the circuit court allowed the above motion and ordered that plaintiffs' evidence be restricted to damages which they suffered after they acquired the Park Hills golf course and country club. However, the court did allow plaintiffs leave to amend their complaint so as to allege a May 28, 1981, assignment and conveyance to plaintiffs of all of the corporation's assets, which included choses in action. On the same date, the circuit court denied a motion by defendant for summary judgment, or alternatively, dismissal of plaintiffs' complaint with prejudice, on the basis that the corporation is a necessary party to this action.

On July 2, 1987, plaintiffs filed an amended complaint. In addition to listing additional breaches of duty on the part of defendant, including some premised on purported violations of Federal laws (*e.g.*, 7 U.S.C. §136j(a)(2)(G) (1976); 33 U.S.C. §1311(a) (1976)), plaintiffs stated that they are the actual, *bona fide* owners of a chose in action of Grunloh Corporation against defendant, for the damages alleged in the complaint. The plaintiffs stated they obtained an assignment of the corporation's cause of action on May 28, 1981, by virtue of an assumption agreement and bill of sale of the same date. The plaintiffs asserted that they therefore had standing to maintain an action for all of the damages sustained by both the corporation and by them individually.

Copies of both the assumption agreement and bill of sale are at-

tached to the plaintiffs' amended complaint. The assumption agreement provides:

> "[F]or and in consideration of the surrender and cancellation of the stock owned by [plaintiffs], the conveyance [by the corporation] to [plaintiffs] of all assets, and for the sum of One Dollar ($1.00) and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, the [plaintiffs] [do] hereby assume and agree to pay for and on behalf of [the corporation] any and all liabilities of [the corporation] ***."

The bill of sale provides in part:

> "KNOW ALL MEN BY THESE PRESENTS, that GRUNLOH CORPORATION, an Illinois Corporation, of the City of Effingham, County of Effingham and State of Illinois, for and in consideration of the surrender of stock of grantees in grantor corporation for cancellation and the further consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby sell, transfer, quit-claim and convey unto CLIFFORD GRUNLOH and MARIAN GRUNLOH, all right, title and interest in and to the following goods and chattels and items of personal property, to-wit: An itemized list of such goods, chattels and personal property marked Exhibit 'A' is attached hereto and incorporated herein by this reference as fully and completely as if the same had been completely set forth herein."

Exhibit "A" of the bill of sale describes the property transferred as: "All goods and chattels and personal and intangible property of every kind and description wheresoever the same may be situated, including, but not limited to, the following ***." Choses in action are not among the property specifically listed in exhibit "A" of the bill of sale.

On August 3, 1987, the defendant filed a motion to dismiss the plaintiffs' amended complaint. The motion alleged plaintiffs were not entitled to assert the corporate causes of action for the reasons stated with respect to defendant's first motion *in limine* and defendant's motion for summary judgment and alternative relief. The motion further alleged that any cause of action owned by the corporation ceased to exist in May 1983, on the second anniversary of the corporation's dissolution, by virtue of section 94 of the Business Corporation Act of 1933 (Ill. Rev. Stat. 1981, ch. 32, par. 157.94). Also, defendant contended that the claimed assignment of the corporation's causes of action for damage to the golf course did not increase the survivability

of that action and did not vitiate the corporation's failure to file suit with respect to that claim within two years of its dissolution. Finally, defendant alleged the assumption agreement and bill of sale attached to the amended complaint were insufficient as a matter of law to convey or transfer the corporate causes of action sought to be asserted in the amended complaint.

In an order entered January 22, 1988, the circuit court held that the claims of the individual plaintiffs alleged in the amended complaint "are proper," but ordered the portions of the amended complaint, wherein the plaintiffs sought to recover the alleged damages accruing to Grunloh Corporation, stricken. The court ordered that plaintiffs are barred and foreclosed from attempting to recover for any claims or causes of action which belonged to the corporation. As the basis for its decision, the circuit court relied on *Poliquin v. Sapp* (1979), 72 Ill. App. 3d 477, 390 N.E.2d 974, and *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.* (7th Cir. 1980), 629 F.2d 1183. The court held that there was no just reason to delay enforcement or appeal of this order, since it terminated that part of the litigation which pertained to the effort to assert a cause of action and collect damages which belonged to the corporation.

In appealing the circuit court's January 22, 1988, order, the plaintiffs argue that the two cases on which the circuit court relied in reaching its decision are not in point, because in those cases the question was whether individual shareholders could bring suit on corporate claims which had not been assigned to them. The plaintiffs note that here, unlike in those two cases, the claims have been assigned to the former shareholders who are suing on them.

The plaintiffs further argue that causes of action for injuries to real or personal property are assignable, and suit on assigned causes of action may be brought in the name of the assignee. Plaintiffs additionally contend their failure to allege in their initial complaint that they were bringing suit in their capacities as assignees, in addition to their individual capacities, is a mere technical defect, which may be cured by the filing of an amended complaint which relates back to the filing of their initial complaint, pursuant to section 2—616 of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—616.) They point out that their initial complaint furnished defendant with all of the information necessary in order to prepare its defense to this action. The plaintiffs finally note that an assignment of a chose in action owned by a corporation divests the corporation of its right to file suit with respect to the action, and thus, Grunloh Corporation could not have brought suit on the corporate claims after the transfer

of all of the corporation's assets to plaintiffs in May 1981.

The defendant asserts that the circuit court properly barred the plaintiffs from recovering the losses purportedly incurred by the corporation. The defendant maintains that it did not discover the true state of ownership of the Park Hills golf course until the production at a June 11, 1987, deposition of plaintiffs' accountant, James H. Houston, of documents which conclusively established that the Park Hills golf course and country club had been owned by a corporation prior to May 1981. Also, defendant asserts plaintiffs are bound by a statement in a June 3, 1983, response to interrogatories that they purchased the Park Hills golf course and country club in 1965, and by a statement of Mr. Grunloh at a deposition that he and his wife acquired title to the property. The defendant maintains that the plaintiffs should not now be permitted to argue that the subject property was owned by a corporation and that they have acquired title to a cause of action belonging to the corporation. The defendant also asserts that the corporation's cause of action was never properly assigned to plaintiffs because (1) it is not specifically described in the May 1981 assumption agreement and bill of sale; (2) the corporation's cause of action, which plaintiffs admittedly did not discover until July 1, 1981, could not have been among the property intended to be assigned by the parties when they executed the assumption agreement and bill of sale; and (3) the defendant received no notice of the assignment within the two-year period following the corporation's dissolution. The defendant argues that in any event, the corporation's claim for punitive damages could not have been assigned, since actions for punitive damages do not survive the death of their owners, and actions which do not survive the death of their owners are not assignable.

The defendant further asserts that if there was a valid assignment to plaintiffs of the corporation's cause of action, the plaintiffs may not maintain that action, because shareholders of a corporation may not bring suits for damages caused to the corporation, even when the corporation has been dissolved or the value of the shareholders' stock has been diminished as a result of alleged tortious acts against the corporation. The defendant notes that previous decisions hold that (1) even inchoate corporate claims are governed by the two-year deadline for bringing suit prescribed by section 94 of the Business Corporation Act of 1933 (Ill. Rev. Stat. 1981, ch. 32, par. 157.94), and (2) section 94 is a corporate survival statute, as opposed to a statute of limitation, and the tolling principles applicable to statutes of limitation are inapplicable to that section. Finally, the defend-

ant asserts that the corporation's causes of action ceased to exist in 1983, two years after the corporation's dissolution, and a holding that the plaintiffs' amended complaint relates back to the filing of plaintiffs' initial complaint, with respect to the corporate causes of action, would permit the revival of already long-extinguished causes of action.

In their reply argument, the plaintiffs assert the corporation's existence and its ownership of the Park Hills golf course and country club was made known to defendant long before June 1987 by means of discovery and disclosures provided by plaintiffs and by means of defendant's own independent knowledge and investigation. The plaintiffs maintain that the corporation's claims for punitive damages were properly asserted by them in their amended complaint, because section 94 of the Business Corporation Act (Ill. Rev. Stat. 1981, ch. 32, par. 157.94) provides that *all* corporate claims survive for two years after a corporation's dissolution, and public policy considerations favor a holding that a claim for punitive damages, premised on alleged illegal pollution of streams with toxic chemicals, is assignable upon dissolution of a corporation.

The plaintiffs additionally note a corporation acquiring another corporation obtains the acquired corporation's claims for damages and assert, in view of this principle, there is no reason why a corporation's claim for damages should not pass to the assignee of all of the corporation's assets and liabilities. Finally, plaintiffs maintain that under the modern view, section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—616) is equally applicable to both statutory conditions precedent to maintaining causes of action and statutes of limitation, and that in this action they are simply seeking to assert the same claims as the corporation could have asserted had it not been dissolved, rather than enlarging upon the corporation's claims.

■ At the outset, we reject defendant's contention that plaintiffs are bound by prior judicial admissions that a corporation never owned the Park Hills golf course and country club. As defendant points out, a statement within a party's personal knowledge, which is made in the course of discovery, constitutes a judicial admission, which that party may not contradict by attempting to adopt inconsistent evidence or by attempting to supply inconsistent allegations. (*Hansen v. Ruby Construction Co.* (1987), 164 Ill. App. 3d 884, 518 N.E.2d 354.) In the present case, however, there are simply no statements on the part of plaintiffs which unequivocally establish that the Park Hills golf course and country club was at no time owned by a corporation. In the plain-

tiffs' answers to interrogatories propounded by defendant, filed June 3, 1983, the following question and answer appears:

"2. With respect to the golf course and country club which you allege to have suffered damage, state the following:

(a) Describe your ownership interest and the date or dates when you acquired all such interest.

ANSWER: The property was purchased by Plaintiffs in 1965."

However, in the same set of interrogatories there also appears:

"26. List the earnings from your investment in the golf course and country club known as 'Park Hills' during each of the preceding ten years, and describe how you computed same identifying all books, records or other materials relied on by you in giving your answer.

ANSWER: See attached profit and loss summary from 1972 through 1981, the 1982 figures have not yet been compiled."

Among the profit and loss summaries attached to the answers to these interrogatories are reports of audits of the corporation for the years 1972 through 1980, which list "Land-golf course," "Clubhouse," and "Pro shop building" among the corporation's assets. On the basis of these portions of plaintiffs' responses to interrogatories, we conclude that the plaintiffs did not make an unequivocal judicial admission in their answers to interrogatories that the Park Hills golf course and country club was at no time owned by a corporation.

■ As previously noted, the defendant also asserts that the plaintiffs are bound by a judicial admission concerning ownership of the Park Hills golf course and country club which is contained in a deposition of Mr. Grunloh. No deposition of Mr. Grunloh is, however, included in the record. In considering whether a circuit court judgment is erroneous, this court may consider as evidence only matters appearing of record. (*Collosseo v. Lynn* (1980), 88 Ill. App. 3d 344, 410 N.E.2d 577.) We may not, therefore, consider defendant's argument based on a statement purportedly contained in a deposition which is not included in the record which is before us.

■ The record also does not support defendant's contention that prior to June 1987 it had no knowledge that the Park Hills golf course and country club was ever owned by a corporation and that a portion of the losses which plaintiffs claimed in their initial complaint were purportedly incurred during a period of corporate ownership. The defendant made no such contention in its motion *in limine,* in its motion to dismiss plaintiffs' amended complaint, or in its arguments concerning these motions. Moreover, defendant did not submit an affi-

davit or any other evidence which supports this contention. We cannot, therefore, say that the record clearly supports a conclusion that prior to June 1987 defendant had no knowledge that the Park Hills golf course and country club was at one time owned by a corporation.

■■ ■ We next consider whether the corporation's claims were effectively assigned to plaintiffs. At the outset, we observe that at the time of the May 28, 1981, execution of the assumption agreement and bill of sale, the Business Corporation Act of 1933 provided that a corporation has power "[t]o sell and convey, mortgage, pledge, lease as lessor, and otherwise dispose of all or any part of its property and assets." (Ill. Rev. Stat. 1981, ch. 32, par. 157.5(e).) An assignment of a chose in action which belongs to a corporation is obviously a disposition of corporate property and assets within the meaning of the above-quoted statutory language. Furthermore, it has long been recognized that corporations generally possess the power to assign choses in action, provided the assignments are made for a legitimate corporate purpose and violate no express restrictions in the corporate charter. (See 6A H. Schlagman, Fletcher Cyclopedia Corporations §2928, at 595 (rev. ed. 1981); *McIntire v. Preston* (1848), 10 Ill. 48, 63.) The record in the present case contains nothing which would indicate that the assignment to plaintiffs of the corporation's assets—including the corporation's claims for damages against defendant—was not done pursuant to a legitimate corporate purpose or was done in contravention of the provisions of the documents which brought the corporation into being. For these reasons, the corporation had the power to assign its claims against defendant to plaintiffs, subject to common law principles governing the assignability of the various types of choses in action.

■ At common law, actions which survive the death of their owner generally are assignable. Causes of action arising from tortious injury to property are among those which survive the death of their owner and thus are assignable. (*North Chicago Street R.R. Co. v. Ackley* (1897), 171 Ill. 100, 49 N.E.2d 222.) However, the general rule which provides for survival and assignability of actions for damages to property is applicable only to compensatory damages. It does not apply to punitive damages, because punitive damages, unlike compensatory damages, are primarily intended to punish the defendant for wrongful conduct and to discourage others from engaging in similar wrongful conduct. See *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 330 N.E.2d 509.

■ No Illinois cases have apparently considered whether actions for punitive damages are assignable. Several decisions have, however,

considered whether actions for punitive damages survive. The factors generally considered in determining whether an action for punitive damages survives are: (1) whether under ordinary circumstances the requested punitive damages have a statutory basis or are an integral component of a regulatory scheme and the remedy available thereunder; and (2) whether strong equitable considerations favor survival of an action for punitive damages. Matters which are relevant in considering the second of the above factors include whether the defendant's alleged conduct offends against a strong and clearly articulated public policy; whether the underlying conduct constituted intentional misconduct, which is also a crime, instead of mere wilful and wanton conduct, which shades into simple negligence; and whether absent an award of punitive damages, a plaintiff who prevailed on the merits of his or her claim would at most be entitled to only a comparatively small recovery. See *Raisl v. Elwood Industries, Inc.* (1985), 134 Ill. App. 3d 170, 479 N.E.2d 1106.

As plaintiffs point out, section 94 of the Business Corporation Act of 1933 describes the actions which survive thereunder as *"any* right or claim existing, or *any* liability incurred." (Emphasis added.) The statute further provides that *"[a]ny* such action or proceeding" may be commenced within the prescribed two-year period. (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 32, par. 157.94.) This does not, however, answer the question of whether the plaintiffs may maintain the causes of action for punitive damages which the corporation purportedly assigned to them. If an action for punitive damages on the basis of the facts alleged in plaintiffs' amended complaint is not assignable, no party other than the corporation could have maintained such an action, notwithstanding that the action survived for two years after the dissolution of the corporation.

Our review of the enactments containing the statutes on which the corporation's claims for punitive damages are in part premised, reveals that the corporation's claims for punitive damages have no statutory basis. Moreover, punitive damages are not integral components of the regulatory schemes which contain these statutes. Also, there are no facts stated in plaintiffs' complaint which would support a conclusion that defendant intentionally or maliciously damaged the corporation's property through the discharge of pollutants.

In their amended complaint, plaintiffs request compensatory damages of $10 million. In view of the amount of damages which plaintiffs request and the damages which plaintiffs allege defendant caused to the Park Hills golf course, this is not a case where the plaintiffs would necessarily be limited to only a small amount of compensatory

damages should they prevail on the merits of their claims. Although pollution of streams and other water sources is clearly offensive to both State and Federal public policy, this factor alone does not outweigh the other factors which support a conclusion that the corporation's claims for punitive damages do not survive at common law and hence are not assignable. For these reasons, we hold that the corporation was precluded from assigning to the plaintiffs its claims for punitive damages for the harm which defendant purportedly caused to the Park Hills golf course.

■ The May 1981 bill of sale and assumption agreement was, however, legally sufficient to assign the corporation's causes of action for compensatory damages. "Any language, however informal or poorly expressed, if it shows the intention of the owner of the property or chose in action to transfer it, clearly and unconditionally, and sufficiently identifies the subject matter, will be sufficient to vest the property therein in the assignee." (6A C.J.S. *Assignments* §49, at 664 (1975).) *Hogan v. Dalziel* (1963), 40 Ill. App. 2d 19, 188 N.E.2d 367, and *Klehm v. Grecian Chalet, Ltd.* (1987), 164 Ill. App. 3d 610, 518 N.E.2d 187, on which defendant relies, contain similar statements of the requirements for a valid assignment in the context of equitable proceedings. However, the above-quoted statement of the requirements for a valid assignment clearly is not limited to equitable actions.

Neither *Hogan* nor *Klehm* held that the assignments involved in those cases were insufficiently specific. In a third case cited in support of the defendant's position as to this issue, *Associated Metals & Minerals Corp. v. Isletmeleri* (1955), 6 Ill. App. 2d 548, 128 N.E.2d 595, there was no written document which assigned rights to specific assets and, on this basis, the court held there was no valid assignment.

In the present case, it is apparent that by executing the bill of sale and assumption agreement, the parties thereto intended that the plaintiffs obtain all of the corporation's assets in exchange for plaintiffs assuming all of the corporation's liabilities. Defendant cites no cases holding undiscovered causes of action are not included in an all-encompassing assignment such as that here at issue, and we know of no sound public policy reasons for so holding. In view of the all-inclusive nature of the transaction by which the plaintiffs and only the plaintiffs obtained all of the corporation's assets, we cannot say that any previously undiscovered causes of action belonging to the corporation were not among the assets transferred. For these reasons, we hold (assuming that the bill of sale and assumption agreement are

properly authenticated at trial) that the bill of sale and assumption agreement transferred to plaintiffs the corporation's claims for compensatory damages for the harm which defendant allegedly caused to the Park Hills golf course.

We next consider the defendant's contention that because an assignee's rights are identical to those of the assignor at the time of notice of the assignment, and because defendant received no notice of the assignment of the corporation's assets to plaintiffs within the two-year time period prescribed by section 94 of the Business Corporation Act (Ill. Rev. Stat. 1981, ch. 32, par. 157.94), the corporation's causes of action were not effectively assigned to plaintiffs. In support of this argument, defendant relies principally on *Ensign v. Illinois Central R.R. Co.* (1913), 180 Ill. App. 382, and section 2–403(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2–403(a)).

Absent a statutory requirement to the contrary, notice to the debtor is not essential to the validity of an assignment, unless the debtor acted to his prejudice because of lack of notice or before receiving notice of the assignment. (See 6A C.J.S. *Assignments* §64, at 692-93 (1975).) This principle was adopted in an early decision of the appellate court. (*Moore v. Gravelot* (1879), 3 Ill. App. 442.) The main function served by notice to the debtor of an assignment of a claim against the debtor is the establishment of the priority of the assignment over subsequent assignments of the debtor's obligation by the assignor or subsequent garnishments by the creditors of the assignor. See *Moore*, 3 Ill. App. 442.

*Ensign*, on which defendant relies, is an example of a situation in which notice of an assignment was necessary in order for an assignment to have priority over other claims and to avoid prejudice to the party whose obligations were assigned. There, the plaintiff brought suit against the Illinois Central Railroad requesting damages for the railroad's failure to deliver to him four cars of coal, pursuant to bills of lading which had been assigned to plaintiff. The court upheld a judgment for the railroad on the basis, *inter alia*, that plaintiff provided the railroad with no notice of the assignment of the bills of lading, and the railroad thus properly delivered the coal to another party.

In the present case, defendant makes no contention that it has already paid to another a portion of the damages which the corporation allegedly suffered as a result of the defendant's conduct. Therefore, the defendant's possible lack of notice of the assignment of the corporation's chose in action to the plaintiffs within the two-year period established by section 94 (Ill. Rev. Stat. 1981, ch. 32, par. 157.94) caused no prejudice to defendant and does not preclude a

holding that the corporation effectively assigned its claims for compensatory damages against defendant to plaintiffs.

We finally consider the principal question involved in this appeal—whether the portions of plaintiffs' amended complaint alleging that plaintiffs own the corporation's causes of action for compensatory damages by virtue of an assignment to them of those causes of action relate back to the filing of plaintiffs' initial complaint in 1982, so as to render the assertion of the corporate claims timely within the meaning of section 94 of the Business Corporation Act (Ill. Rev. Stat. 1981, ch. 32, par. 157.94). Section 94 provides:

> "The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by the order of the court when the court has not liquidated the assets and business of the corporation, or (3) by expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name."

The portion of the Code of Civil Procedure governing amendment of pleadings and relation back of amendments to pleadings provides:

> "(a) At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim.
>
> (b) The cause of action, cross claim or defense set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted, or the defense or cross claim interposed in the amended pleading grew out of the same transaction or occurrence set up in the original

pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery or defense asserted, if the condition precedent has in fact been performed, and for the purpose of preserving the cause of action, cross claim or defense set up in the amended pleading, and for that purpose only, an amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended." Ill. Rev. Stat. 1985, ch. 110, par. 2—616.

In determining whether amended pleadings related back to the filing of the initial pleading, earlier cases sometimes drew a distinction between statutory causes of action, where the filing of a complaint within a certain time period after the occurrence of an event is required by the statute which creates the action, and is thus a condition precedent to bringing suit, and common law causes of action, to which the general statutes of limitations apply. (See *Anderson v. Behr* (1939), 299 Ill. App. 90, 19 N.E.2d 428.) Recent decisions have, however, tended to abandon this distinction.

In *Pavlov v. Konwall* (1983), 113 Ill. App. 3d 576, 447 N.E.2d 982, for instance, the question was whether the relation back doctrine applied in the context of a suit under the Wrongful Death Act (Ill. Rev. Stat. 1979, ch. 70, par. 2). The statute which creates a right of action for wrongful death requires that the action be commenced within two years after the death for which damages are claimed. (Ill. Rev. Stat. 1979, ch. 70, par. 2.) Within this time period, a complaint was filed seeking damages for the decedent's wrongful death, but the special administrator in whose name the suit was brought had not been properly appointed and thus was not a proper party plaintiff. After the special administrator had been properly appointed, he filed a second-amended complaint, which made substantially the same allegations as the original complaint. This latter complaint was not, however, filed within the time period fixed by statute for the filing of a wrongful death action, and thus, the question was whether the proper appointment of the administrator related back to the filing of the initial complaint.

In answering this question in the affirmative, the court observed it had been clear from the start that the action was intended to be filed by the administrator of the decedent's estate. Additionally, both pleadings made substantially the same allegations, and the causes of action asserted in both the original and amended pleadings arose out of the same transaction or occurrence. The court therefore held the

fact that the administrator was not properly appointed until after the period for bringing suit had expired was a technical consideration which, in light of the predecessor of section 2—616(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(b)), should not have prevented the cause from being decided on its merits.

The court also rejected the defendant's argument based on the assertion that the two-year time limit for commencement of wrongful death actions (Ill. Rev. Stat. 1979, ch. 70, par. 2) is a condition precedent to the bringing of such actions. Relying on the prior decision in *Redmond v. Central Community Hospital* (1978), 65 Ill. App. 3d 669, 382 N.E.2d 95, the court held that under the predecessor of section 2—616(b) (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(b)), an amendment to a pleading may relate back to cure a defective pleading which did not set forth a condition precedent to recovery under the Wrongful Death Act.

Also, in *Joyce v. Wilner* (1987), 156 Ill. App. 3d 702, 509 N.E.2d 769, the plaintiffs filed a complaint in their capacities of coadministrators of a decedent's estate. Among the damages sought under a wrongful death theory were the decedent's medical and funeral expenses. The circuit court held that the coadministrators were not legally entitled to recover these damages in the context of a wrongful death action and that the actions for recovery of these damages were time barred. Therefore, the circuit court dismissed the plaintiffs' complaint. On a date more than two years after the decedent's death, the plaintiffs filed an amended complaint, some counts of which requested damages consisting of the decedent's medical and funeral expenses under what is commonly referred to as the family expense statute. (Ill. Rev. Stat. 1985, ch. 40, par. 1015.) The plaintiffs claimed these damages in their capacities as decedent's parents. The circuit court dismissed these counts on the defendants' motion, holding that the applicable two-year limitations period had expired with respect to claims for these damages.

The appellate court reversed the circuit court's dismissal of the counts of the amended complaint which requested as damages the decedent's medical and funeral expenses, holding (1) that the cause of action for these damages arose out of the same transaction as that set forth in the original complaint, and (2) that it was clear plaintiffs intended to claim such damages in their original complaint, because they made substantially the same allegations in their amended complaint as in their original complaint. The court concluded that the defendants would not be prejudiced by the inclusion of the disputed counts in the amended complaint, because the original complaint in-

formed them of all of the facts which formed the basis for the actions asserted in those counts. For these reasons, the court found that the failure of the plaintiffs to properly allege in their initial complaint the capacities in which they brought suit was a technical deficiency, and that under section 2—616 (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(b)), the amended complaint related back to the filing of the original complaint.

Also of relevance to this issue is the supreme court's decision in *Geneva Construction Co. v. Martin Transfer & Storage Co.* (1954), 4 Ill. 2d 273, 122 N.E.2d 540. There the question was whether, after the two-year limitation period pertaining to claims for personal injuries had expired, an injured worker could join in a workers' compensation subrogation action originally filed by his employer and recover damages in addition to those which the employer sought under its subrogation rights. The court held the injured worker could join in the action. The court observed that the employer's original complaint provided the defendant with all of the information necessary to prepare its defense to the claim which the injured worker filed beyond the limitations period, and defendant was not, therefore, prejudiced by the amendment. The court stated that the amended complaint asserted no more than an additional claim for damages arising from a transaction fully described in the initial complaint.

The court rejected a contention of the defendant that permitting relation back under these circumstances was improper because the claim asserted by the injured worker was not the one for which the original complaint was intended to be brought. The court stated that to hold that the question of relation back of an amendment to a pleading is governed by the subjective frame of mind of the pleader would restore the formalistic approach to determining the right to amend pleadings, which the legislature intended to abolish in enacting the predecessor of section 2—616. Ill. Rev. Stat. 1985, ch. 110, par. 2—616.

In the present case, the corporation's claims asserted in the amended complaint arose out of the same transactions or occurrences which were described in the initial complaint—defendant's alleged discharge of pollutants into Sur's Creek and into a tile, which resulted in damage to the Park Hills golf course. The initial complaint generally informed defendant of the basis for plaintiffs' claims and provided defendant with adequate information on the basis of which it could investigate plaintiffs' claims. (*Geneva Construction Co.*, 4 Ill. 2d 273, 122 N.E.2d 540; *Joyce*, 156 Ill. App. 3d 702, 509 N.E.2d 769.) The original complaint was filed on July 9, 1982, well within two years of

the corporation's dissolution in May 1981. Under these circumstances, the reasons for applying statutes of limitation do not exist. *Geneva Construction Co.*, 4 Ill. 2d 273, 122 N.E.2d 540, citing *New York Central & Hudson River R.R. Co. v. Kinney* (1922), 260 U.S. 340, 67 L. Ed. 294, 43 S. Ct. 122.

The fact that the assertion of a corporate cause of action within two years of a corporation's dissolution (Ill. Rev. Stat. 1981, ch. 32, par. 157.94) may be a condition precedent to bringing corporate causes of action, as opposed to a limitation of such actions, is not a significant distinction in determining whether the relation back doctrine renders a cause of action timely within the meaning of section 94 of the Business Corporation Act of 1933. (See *Pavlov*, 113 Ill. App. 3d 576, 447 N.E.2d 982; *Redmond*, 65 Ill. App. 3d 669, 382 N.E.2d 95.) None of the cases interpreting section 94 (Ill. Rev. Stat. 1981, ch. 32, par. 157.94) upon which defendant relies involved a question similar to that presented by this case, and therefore none of those cases require a different result from that which we here reach.

In *Canadian Ace Brewing Co.*, 629 F.2d 1183, *Gorden v. Loew's, Inc.* (D.N.J. 1956), 147 F. Supp. 398, and *Poliquin*, a suit which set forth claims for damages which belonged to a dissolved corporation was not filed within two years of the corporation's dissolution. Thus, the relation back doctrine could not have been applied in those cases. Also, *Poliquin* apparently did not involve an assignment of a claim belonging to a corporation. In *Brodsky v. Frank* (1930), 342 Ill. 110, 173 N.E. 775, the court merely held a shareholder may not sue in his individual capacity for damages which were suffered by a corporation, even if the corporation has been dissolved and the shareholder owned all of the corporation's stock. Again, no assignment of corporate claims was involved. *Kennedy v. First National Bank* (1985), 129 Ill. App. 3d 633, 473 N.E.2d 604, likewise did not deal with an assignment of a corporate cause of action. The essence of this court's holding in that case was that damages suffered by a major shareholder of a corporation, which result from harm inflicted on the corporation, are merely derivative, and such a shareholder has no individual cause of action with respect to the damages that he sustained which resulted from harm to the corporation. The holding of *In re Possession & Control of Knight* (1965), 60 Ill. App. 2d 457, 208 N.E.2d 679, is substantially the same.

In *Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Building Corp.* (1937), 302 U.S. 120, 82 L. Ed. 147, 58 S. Ct. 125, the sole question was whether a corporation could file a petition for voluntary bankruptcy more than two years after its dissolution, which

the Court answered in the negative. This court held in *McGinnis v. A. R. Abrams, Inc.* (1986), 141 Ill. App. 3d 417, 490 N.E.2d 115, that a complaint seeking damages for personal injuries cannot be amended after expiration of the limitations period to allege an action on the part of the plaintiff's wife for loss of consortium, where the wife was not named as a plaintiff in the original complaint. This court observed that the attempted amendment represented a new cause of action by a new party. In the case at bar, however, the plaintiffs in both complaints are the same, the only difference being that in the amended complaint they appear in their capacities as assignees of the corporation's chose in action, as well as in their individual capacities, rather than solely in their individual capacities. (See *Joyce*, 156 Ill. App. 3d 702, 509 N.E.2d 769.) Lastly, defendant cites *Koepke v. First National Bank* (1972), 5 Ill. App. 3d 799, 284 N.E.2d 671, in support of the proposition that the shareholders of a corporation lack standing to maintain corporate causes of action in their individual capacities, even where the corporation is dissolved, the plaintiffs are its sole shareholders, or there is an asserted assignment of the corporate causes of action. The assignment of corporate causes of action is not, however, discussed at any point in the *Koepke* decision.

Our holding with respect to the relation back of plaintiffs' amended complaint renders unavailing defendant's argument based on section 2—403(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—403). Section 2—403(a) reads:

> "Who may be plaintiff—Assignments—Subrogation. (a) The assignee and owner of a non-negotiable chose in action may sue thereon in his or her own name. Such person shall in his or her pleading on oath allege that he or she is the actual bona fide owner thereof, and set forth how and when he or she acquired title. The action is subject to any defense or set-off existing before notice of the assignment."

In this case, the corporation's action was constructively filed on July 9, 1982, by virtue of section 2—616(b) of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(b).) Thus, the purported filing of the corporation's claims beyond the time period prescribed by section 94 of the Business Corporation Act of 1933 (Ill. Rev. Stat. 1981, ch. 32, par. 157.94) is not a defense to the corporation's claims which existed before defendant received notice of the assignment.

The circuit court order from which plaintiffs appeal is affirmed to the extent it prevents the plaintiffs from asserting the corporation's claims for punitive damages and reversed to the extent it precludes the plaintiffs from asserting the corporation's claims for compensa-

tory damages. This cause is remanded to the circuit court with directions that plaintiffs be permitted to assert the corporation's claims for compensatory damages for the harm which defendant allegedly caused to the Park Hills golf course.

Affirmed in part; reversed in part and remanded with directions.

GREEN, P.J., and LUND, J., concur.